Coast Ship Co. *v.* Yeager.

[81 South. 797, Division B, No. 20640.]

1. Master and Servant. *Injuries to servant. Warning servant. Latent dangers.*

    When an employee while working inside the hull of a ship near completion and in ignorance of the fact that boring with an auger was being done from the outside at the point at which he was working, was struck by an auger driven through the sides of the ship by employees on the outside, and the employer could feasibly have adopted and used a system for giving notice of the place of boring to those inside. In such case the employer was negligent in not doing so, though other ship builders used no such warning device.

2. Master and Servant. *Injuries to servant. Safe place to work.*

    Where a carpenter, working in the hull of a ship, is in constant danger of being struck by augers bored through the sides of the ship by employees on the outside, because his employers did not employ any device for giving notice of the place of boring to those on the inside. In such case there was a failure to provide him a safe place in which to work, and he can recover for injuries sustained on account of such failure.

Appeal from the circuit court of Harrison county. Hon. A. E. Weathersby, Judge.

Suit by Benjamin Yeager against the Coast Ship Company. From a judgment for plaintiff, defendant appeals.

The facts are fully stated in the opinion of the court.

*McDonald & Marshall,* for appellant.

*Mize & Mize,* for appellee.

Stevens, J., delivered the opinion of the court.

Appellant, a corporation engaged in shipbuilding at Biloxi, Miss., was the defendant in the court below,

and prosecutes this appeal from a judgment for three thousand dollars awarded appellee, as plaintiff, who sues for personal injuries sustained by reason of the alleged negligence of the defendant company. Plaintiff declared upon five counts in his declaration, one of which charges that he was not given a safe place to work, and one that a proper signal or warning was not given, and that the plaintiff was injured by the defendant's negligence in not maintaining a watchman or some warning device.

Defendant had proceeded with the construction of the ship to the extent that the ribs had been put up and the ship had been planked and partially ceiled. Appellee was foreman of the ship carpenters engaged in the work of ceiling the ship on the inside, and also had supervision of some men whose duties required them to select timbers on the outside and bring them on the inside. Working on the outside of the ship at the time of the injury was a squad of men known as "trunnel borers," engaged in the business of boring "trunnel holes" from the outside to the inside of the ship. The defendant had employed a Mr. Hance as general superintendent over all of the men. A Mr. Carter was foreman of the men engaged in boring, and is sometimes referred to as the "straw boss."

After the construction of the vessel had proceeded to a certain extent, the blocks which balanced the vessel on its keel and braced it along each side, were removed. The evidence shows that, after these blocks have been removed, the small vacant spaces formerly occupied by the blocks and termed "block spots" must be bored by the squad of men engaged in boring the "trunnel holes," and on the occasion complained of the drillers under Mr. Carter were going from spot to spot boring the necessary "trunnel holes." At this stage the men within the hull could neither see nor hear those on the outside; the ceiling and planking being carried

high up, and the side of the ship being approximately thirty-six inches in thickness.

The plaintiff knew in a general way that the drillers were ''boring out the block spots,'' but in performing his duties on the inside of the ship, and in stepping to the side of the ship to reach up and take a measurement with a rule, he placed his foot on one of the timbers opposite a ''block spot,'' when a drill or auger suddenly came through the side of the ship, entered the ball of plaintiff's foot, and bored clear through the shoe and foot, causing the plaintiff to lose his toe, one or more bones of the foot, and otherwise inflicted painful and permanent injuries. The boring was done under the immediate supervision of Carter, the straw boss; but the general superintendent was present on the yard, and directed Carter to bore out the ''block spots.'' The evidence discloses that plaintiff, three days prior to the injury had been struck by a drill on the same foot, and that he complained about it to the general superintendent.

Issue was joined, much testimony taken for the plaintiff and the defendant, and a verdict was returned by the jury in favor of the plaintiff for the full amount sued for. There was only one instruction granted the plaintiff on the merits of the case, and that related to the obligation of the defendant to furnish plaintiff with a reasonably safe place in which to work.

Counsel for appellant, in a strong brief, contend that the defendant was entitled to a peremptory instruction, and that the court erred in refusing to direct a verdict for the defendant. It is contended that the testimony shows no negligence whatever in that appellant had adopted the usual and customary devices and system for the construction of vessels and that its methods, system, and place of work were those permitted by the safety rules of the United States government in the various shipyards of this country. It is further con-

tended that in this case the place of work constantly underwent changes as the construction progressed, and for that reason that the doctrine of safe place to work has no application.

This appeal submits for our determination the general question of liability, whether there is any negligence at all contributing to the injury complained of. In testing the propriety and legality of the judgment, it is important to notice carefully the testimony offered on behalf of the plaintiff, and from it determine the measure of care which the ship company in this instance employed for the safety of its employees.

The testimony tends to prove that usually about four augers were operated at the same time, that these augers were driven by compressed air, that it required two operators to handle one auger, that the boring in connection with carpenters' work on the inside of the ship created a great deal of noise, and that the plaintiff could not hear the drillers on the outside opposite to the place where he received his injury, and had no intimation or warning of any kind that an auger was being driven through the side of the ship at the particular spot where the plaintiff was taking measurements. The first notice he had was the sudden and cruel penttration of the auger into plaintiff's foot. This auger was one-eighth of an inch in diameter.

Plaintiff contended, and there is some little proof tending to show, that a platform for the workmen on the inside of the ship could well have been provided, and that some shipyards in fact used a platform, and that a "rack" or platform was constructed after the plaintiff received his injuries, and since the injury this platform has been working in a satisfactory and practical manner. Appellee, as well as the general superintendent, Hance, testified that a platform could have been erected, and one has been erected since the injury.

There is abundant testimony, however, on behalf of the defendant, that a platform is impractical, and is not used by the larger and leading shipbuilding companies.

There is also testimony tending to show that the best and safest method to avoid injury of the kind complained of would be to have a system whereby the men on the inside would be notified when boring is to be done by the "trunnel borers" at any particular spot, and Mr. Hance, the general superintendent, in answer questions as to whether you could easily and successfully notify the foreman on the inside, responded, "It could be done; yes, sir." Mr. Buckley, an assistant superintendent for a shipbuilding company at Pascagoula, testified that it was the duty of the general superintendent to notify the men on the inside where the boring crew is at work, and this and other testimony in the record tends, we think, to establish the fact that a system of notification could have been employed.

The evidence discloses that, while the plaintiff knew the "trunnel holes" were being bored at a particular spot, when plaintiff went to the side of the ship at the moment he received his injuries, the drillers on the outside had suddenly moved their place of work some thirty-five feet, and the first hole bored at that particular spot struck the plaintiff's foot. If the plaintiff had known that the boring was actually being done at that particular place, a different case might be presented; but his testimony is positive that he did not know the crew had moved to the new place, and the very first hole bored at this new place penetrated at the very spot where plaintiff was resting his foot.

So the record presents primarily an instance where an employee has been injured through the failure of the master to maintain a system of signals or warnings. The defendant on the trial of the case did not admit that such a system had been inaugurated or maintained, and denied its necessity. The whole testimony for the

defendant is directed to the point that accidents of this kind are very seldom; that no large and well-ordered shipyards attempt to maintain a system of warning against injuries from boring; that the work of constructing a ship is necessarily more or less dangerous, and that the foreman of the carpenters at work on the inside usually looks out for this; and that it was the duty of employees to look out for themselves. One of the witnesses, an experienced shipbuilder, suggested that an accident of this kind could be averted by regulating the auger, so that it would bore through the thickness of the ship's side and no further. We mention this bit of testimony as tending to show that from any viewpoint it is perhaps not impossible to prevent such an accident.

While the evidence is very conflicting, and there is strong evidence for the defendant that no platforms or warning or any other device is used or maintained by competent shipbuilding companies, and that accidents of this character are very seldom, there is nevertheless some evidence supporting the plaintiff's case, and we are hardly justified, therefore, in reversing the case on the facts.

The controlling principles of law in this case, we think, were announced by this court in *Edwards* v. *Lumber Co.,* 113 Miss. 378, 74 So. 284, and *Benton* v. *Finkbine Lumber Co.* 118 Miss. 558, 79 So. 346. In the opinion of the writer there is some room to doubt the conclusions announced by the court in the two cases mentioned, but the decisions in these cases are now precedents, which should rightfully guide us in the present inquiry. It is not always easy to discriminate between dangers that are properly classed as transitory, occasionally occurring during the progress of and as incident to the work, and those dangers which arise from more or less permanent causes.

While the plaintiff in one count relied upon the theory of an unsafe place to work, it is more proper, we think, to say that his injuries resulted from a failure of the defendant company to maintain a proper system of warning. This is not a case where means for the proper warning had been provided, and the employee charged with the duty of giving the signal or warning failed to perform his duty. Negligence in this case must essentially be based upon the failure of the master to adopt a system of notifying his servants of the approach of a well-known danger. It is undisputed that augers driven rapidly and with great force by compressed air through the sides of this ship were a constant danger to those at work on the inside. It is not enough to say that upon the doctrine of change the foot of an employee engaged on the inside would seldom be struck. All the witnesses agree that it is a possibility, and the evidence shows that the plaintiff himself was struck just three days prior to the time he received his more serious injury. But in the sense that plaintiff's place of work had become dangerous by the failure of the defendant to give warning of impending danger, it is not at all inaccurate to say that plaintiff had not been furnished with a reasonably safe place to work.

We are not concerned with the inquiry as to what warning would have been sufficient. We have a case where no warning or system of notification whatever was given or maintained. Here the servant, we think, had a right to be informed of dangers which he himself had no means of ascertaining. 3 Labatt's Master and Servant (2d Ed.), par. 1112. The case presented by this record is different in several particulars from that of *Cybur Lumber Co.* v. *Erkhart,* 118 Miss. 401, 79 So. 235, relied on by appellant.

There is no question as to the serious and permanent nature of the plaintiff's injuries or as to the amount of the recovery. On the whole record, we do not feel justi-

fied in disturbing the findings of the jury or the judgment appealed from.

*Affirmed.*