INTERNATIONAL SHIPBUILDING Co. *v.* CARTER.

[83 South. 413, In Banc.  No. 20844.]

MASTER AND SERVANT.  *Safe place rule.*

The rule which requires the master to furnish a safe place to work does not apply to cases where the prosecution of the work itself makes the place and creates the danger.

APPEAL from the circuit court of Jackson county.
HON. J. H. NEVILLE, Judge.

Suit by S. H. Carter against the International Shipbuilding Company. From a judgment for plaintiff. Defendant appeals.

The facts are fully stated in the opinion of the court.

*McDonald & Marshall,* for appellant.

We submit that appellee could not declare upon one theory or ground of action, and recover upon another. He must recover if at all upon the theory or ground of

action relied upon in his declaration. To permit him to do otherwise would be contrary to law, and would be grossly unfair to appellant. *Richards* v. *City Lumber Company,* 57 So. 97.

There being nothing wrong or negligent in the place of plaintiff's work at the time of the accident, and his place of work being in no legal sense a cause of his injury, the giving of instruction number one for appellee, above set out, has been distinctly condemned and held reversible error by this court in *New Orleans and Northeastern Railroad Company* v. *Williams,* 96 Miss. 373, 53 So. 619.

The "safe place in which to work" doctrine has no applicability to this case, and was not a criterion of liability. Hence the granting of this instruction was prejudicial and reversible error. And so, we submit, with the refusal of the learned court below to grant instruction number five, above set out, requested by appellant in an effort to cure the submission to the jury of this false criterion of liability by the granting of instruction number one for appellee. We are at a loss to conceive of a basis of legal justification for the refusal to grant this charge; or how such refusal could have failed to materially prejudice appellant's right to a fair trial. It was founded upon the testimony, was pertinent to the issue raised upon count one of the declaration and submitted to the jury by the court's refusal to grant appellant's request for a peremptory instruction upon that count; was in direct answer, or at least, supplementary in a necessary way, to instruction number one granted for appellee; and beyond question embodied a correct announcement of the law governing a trial of the issue, if the learned court properly submitted to the jury the issue raised on count one of the declaration.

Further, we submit, beyond the fact that plaintiff's place of work did not in law cause, or contribute to

the occurrence of the accident, the safe place in which to work doctrine could not be applicable as a criterion of liability to this cause. Appellee being engaged in construction work, and the place of work being created by the work itself performed by appellee and his co-laborers, and changing and shifting constantly safe one moment, unsafe the next, as the construction progressed, the doctrine could not be applied. In such case appellee and his co-workers and not appellant, furnished the place of work, they being employed to create that very place. 18 Ruling Case Law, Master and Servant, paragraph 18.

"An exception to the rule requiring the employer to make safe the place is which his employees are at work is said to exist where the conditions of the place are constantly changing as the work progresses." 3 Labatt on Master and Servant, paragraph 1177.

"The rule that it is the duty of a master to provide a reasonably safe place to work for his servants is held not applicable to cases in which the very work at which the servants are employed is of such a nature that its progress is constantly changing the conditions as regards an increase or diminution of safety." *Citreon* v. *O'Rourke Engineering Construction Co.*, 188 N. Y. 339, 80 N. E. 1092, 19 L. R. A. (N. S.) 340; *Walters* v. *Sumerfield Co.*, 160 Iowa, 127, 140 N. W. 388; *Jakopac* v. *Summerville Co.*, 153 Wis. 176, 140 N. W. 1060; *Meehan* v. *St. Louis, etc., R. R. Co.*, 114 Mo. App. 396, 90 S. W 102; *Zeigenmeyer* v. *Charles Goertz Lime and Cement Co.*, 113 Mo. App. 330, 88 S. W. 139; *Utica Hydraulic Cement Co.* v. *Whalen*, 11 Ill. App. 23.

The rule which requires a master to furnish a safe place to work does not apply to that class of cases where the work which the servant is employed to do is constantly producing changes and temporary conditions, for the time being more or less hazardous for

those engaged in the work, and where it would be practically impossible to keep the conditions safe and prosecute the work. *Lassasso* v. *Jones Brothers Co.,* 88 Vt. 526, 93 Atl. 266; *Shields* v. *Bergendahl Bass Engineering Contruction Co.,* 187 Ill. App. 5; *Horton & Horton* v. *Hartley* (Tex.), 170 S. W. 1046; *Morgan* v. *Wabash Railroad Co.,* 158 Ill. App. 344; *Callen* v. *Bull,* 113 Cal. 593, 45 Pac. 1017; *O'Connell* v. *Clark,* 48 N. Y. Supp. 74, 22 App. Div. 466.

"The principle of a safe place does not apply where the prosecution of the work itself makes the place and creates the danger." *Miller* v. *Moran Brothers Company,* 39 Wash. 631, 81 Pac. 1080, 109 Am. St. Rep. 917, 1 L. R. A. (N. S.) 283.

We respectfully submit, therefore, that the learned court below inadvertently committed error gravely prejudicial to appellant in refusing to grant appellant the requested peremptory instruction upon count one of appellee's declaration; in giving instruction number one requested by appellee, and in refusing to give instructions four and five requested by appellant, and that, accordingly the judgment appealed from should be reversed.

*White & Ford,* for appellee.

The case went to the jury on the court declaring it an unsafe place to work and the action of appellant in failing to furnish a sufficient number of reasonably safe tools. The court gave a peremptory instruction charging a failure to furnish a sufficient number of men, but why, we do not see, as there was a direct conflict in the evidence on that point.

Appellant pleaded only the general issue. The defenses of contributory negligence, and negligence of fellow servants are affirmative defenses which must be pleaded and such pleas must state facts showing such defenses.

The defendant is entitled to know what acts are relied on to constitute contributory negligence and negligence of fellow servants, so, if necessary issue can be joined thereon. The bare statement without more that appellee was guilty of contributory negligence and that his fellow servants were guilty of negligence will not do. But no such defenses were shown so the failure to plead same are immaterial. Certainly the allegations of the declaration were proven by appellee's witnesses and also appellant's witnesses.

So to take up appellants brief seriatim. He contends we sued on one theory and recovered on another. He does not state wherein this fact exists. We rely on the declaration which the proof overwhelmingly supports.

The counsel cite *Richards* v. *Lumber Co.,* 57 So. (Miss.), 977, 101 Miss. 678, which absolutely states the law of that case. The negligence charged was worn out and defective machinery which placed too much strain on a belt which broke. There was no proof of such fact but the proof was that some person let the machinery choke and clog which placed so much strain on the belt, new belt, so far as the evidence shows, that it broke. There was no count declaring any negligence in allowing the machine to choke and the proof showed the choking was the sole cause of the injury. The cause failed for total lack of proof.

Counsel criticise instruction No. 1, granted appellee. If appellee was entitled to go to the jury on the first count which cannot be seriously controverted, then this instruction was eminently proper. Counsel cite *Railway* v. *Williams,* 96 Miss. 373. In the Williams case the negligence charged was a failure to furnish a safe place to work, the employee being engaged in carrying a heavy object between two cars for aught that appears, this being the only trip he would make between the two cars and while so doing the cars were switched

on him. The court said the negligence in switching the cars should have been charged.

In the case at bar, count one charged that the place became unsafe by reason of the bringing into the ship of the heavy timber and throwing it on appelee without warning while he was confined in a narrow space. Appellant complains of the refusal of his instruction No 5. The instruction ignores that the finding. must be from the evidence. It ignores the fact that the duty to furnish a safe place is nondelegable and it ignores the evidence that the heavy timber was brought in and pushed on appellee, confining itself to the original situation. There are numerous other instructions in the record for both parties covering all phases of the case.

We recognize the rule in this state that where the work is constantly changing as the work progresses, the servant assumes the risk of that employment, as recognized by this court in *Cybur Lumber Co.* v. *Erkhard*, 118 Miss. 401, which appellant does not cite, but such a case is not presented by this record and the authorities cited by counsel are not in point. Appellant didn't even plead such a defense. By his plea he only denied that the place was unsafe. The negligence here complained of was not a thing constantly changing. The bringing of the heavy timber in to the vessel was an occasion out of the ordinary. That was only one of the duties of appellee. Appellant put him in a trap to work and then without warning or time to escape wilfully shoved a timber weighing many tons on him.

The progress of the work did not mean that while appellee was working with his back to the dolly that another piece should be thrown off on him; nor did the exigencies of the occasion require it. If Carter had been injured in the orderly progress of the work, and by the timber while on the dolly and without negligence,

then a different question would be presented to the court, but appellant cannot say "yes, my foreman, whose duty it was to warn Carter of the very thing and whose duty it was to give the order for the timber to be thrown off, was in a hurry so threw it off on Carter" and then contend this was a part of the progress of the work.   Where the work progressed improperly the principle and the rule does not apply.   The work itself did not make or create the danger, but the method pursued and the place furnished appellee created the danger and caused the damage.

We are familiar with the case of *Miller* v. *Moran*, 1 L. R. A. (N. S.) 283, cited in brief and approve its reasoning.   In that case there was no necessity for the employee to be where he was when injured (standing under a weight of two thousand pounds which was being hoisted and which fell on him) and the court said the accident was due to the fault of no one.   The injured party was not put to work in the place at all. We do not take up all of appellant's cases because we submit the principle enunciated is not involved here. Counsel say that the rule contended for applies because there is "absolutely no criticism of appellant's method, system, or rules of work, nor of the place he happened to be in.   We certainly do criticise the method, system and rules of work and the place, not that he "happened" to be in, but the place he had to be in.

In the case of *Coast Ship Company* v. *Yeager,* 81 So. (Miss.) 797, decided by this court May 19, 1919, through Mr. Justice STEVENS, the same able counsel representing appellant in this case represented the Ship Company in that case.   In the Yeager case the claim was that the injury was due to the failure of the Steamship Company to furnish Yeager a safe place to work in that holes were bored from the outside of the ship and the auger struck the foot of Yeager on the inside.   Counsel contended that as the place of work

constantly underwent changes as the construction pro-
gressed (the same contention here made) there was no
liability, but the supreme court said there was liability.
Certainly the case at bar is a far stronger case than
the Yeager case, because here there was a foreman
present to give the warning and he wilfully had the
timber thrown on Carter when Carter had his back
to the timber and he was in a narrow place where Zink
(the foreman) was bound to see he would be struck.
This case falls squarely within the rule laid down in
*Edwards* v. *Lumber Company*, 113 Miss. 378.

In that case the machinery was started too soon,
the man starting it, a fellow servant of the injured
party, not knowing he was in danger. In the case at
bar the foreman gave the order to set the dangerous
agency in operation, knowing Carter was bound to be
injured. The place Carter was in was not made unsafe be-
cause of the orderly progress of the work, but because
of the almost criminal negligence of the appellant.

The case of *Benton* v. *Hinkbine Lumber Company*,
118 Miss. 558, would more nearly approach the doctrine
contended for by appellant, than this case, but still
this court has held even under a state of facts such as
existed in the Benton case, that liability exists. See,
also, *Oil Co.* v. *Ellis*, 72 Miss. 191. Generally, see *A.
& V. R. R.* v. *Groome*, 52 Miss. 703; *Railroad* v.
*Hardy*, 88 Miss. 732; *Railroad* v. *Bailey*, 40 Miss. 395.

It is doubtful if willful and wanton injury can be
charged and simple negligence proven, and still a re-
covery be had; but in this case simple negligence was
charged and gross, willful and inexcusable negligence
shown by appellant's own testimony and the admission
of its own foreman who was guilty of such. There-
fore appellant is guilty of more than it is charged with
and cannot complain.

COOK, P. J., delivered the opinion of the court.

Not being up in nautical terms and having never seen the hold of a ship, the writer avails himself of the brief of counsel for a statement of the facts, which statement has been verified from the record:

"In January, 1918, appellant was operating a shipbuilding plant in Jackson county, Miss., and there had in progress of construction several large wooden seagoing vessels. In the partially built hull of one of these vessels appellee was employed by appellant to work in the construction as a member of a crew of laborers aiding the regular ship carpenters. The crew of which appellee was a member was under the general supervision and command of a foreman, who deputized one of the crew as straw boss, or leader, when he was temporarily absent from the personal supervision attending to other duties.

"The work of the crew of laborers shifted from one part of the large structure to the other as the varying exigencies of construction arose. The natural hazards of the work grew out of the work's progress, and changed and shifted with its progress. Nothing was unusual or wrong about the work, or in the system, method, or rules under which it was being performed.

"On the date in question, the work required that a piece of timber about one foot square, and approximately forty feet long, be conveyed from near the after part of the hull under construction and placed with other similar pieces on the right-hand side of the keel near the bow. The piece was successfully rolled upon a device commonly known as a 'dolly,' opposite the point at which it was to be deposited with the other piece upon the floor of the ship. Appellee was a member of the crew of some eight or ten other men performing the work. Several cant hooks, or peevies, were being used by the men to roll the piece on the 'dolly,'

and then adjust it properly with the other pieces upon the floor of the ship. Mr. Baxter, the crew leader, himself a laborer, and a member of the crew, directed the men to perform this particular work.

"The proper method for the men to perform the work, and the method then adopted by them, was to stand all on one side of the timber and roll it from them. The points of the peeves are imbedded in the piece, and with the leverage thus afforded the workmen heave upwards on the handle, giving the piece a tendency to roll from them. When the point of balance is passed, the piece rolls over, and the peevy points naturally withdraw themselves. When the center of gravity, or point of balance, is passed by the timber, the men have no control over it, the peevy points withdrawing themselves, and the timber falling forward, regardless of the number or condition of the peevies being used. Should the peevies fail to hold before the point of balance is reached, the piece will roll backwards, on the 'dolly,' and towards the men. After the point of balance is passed no number of peevies can prevent the forward roll of the timber, as the points, as they are meant to do, naturally loosen themselves.

"As the men were performing the work, appellee, for some reason, went in front of the piece on the 'dolly,' standing opposite the place where the piece was to be deposited. All the other men remained in their proper positions behind the piece, to roll it from them. Appellee said that some one—he was totally unable to say who, there being eight or ten men present—suggested that he go in front of the piece to adjust another piece. No other witness heard that. While appellee was in front of the piece on the 'dolly,' the rest of the crew remaining on the other and proper side of the piece, the piece either fell off, or was rolled off, the 'dolly,' striking the appellee's foot, and inflicting upon him the injuries complained of by him in this cause.

"The witnesses to the occurrence gave varying accounts of the occurrence. Appellee himself had no idea why the piece rolled; he merely heard some one shout "Look out" before he was struck. Baxter, the crew leader, said that the piece fell off the 'dolly,' but was utterly unable to say why it fell' or why appellee went in front of it. Joe Bosarg, witness for appellee, said that there was plenty of men at work, with adequate peevies, and that appellee pried the piece off the 'dolly' onto his foot, and that some of the crew 'reniged.' None of the witnesses for appellee knew why the piece fell or rolled towards appellee."

A number of instructions were given for both the plaintiff and defendant. Instruction No. 1, given by the court at the request of plaintiff, is in these words:

"The court instructs the jury, for the plaintiff, that the International Shipbuilding Company owed plaintiff and his coemployees the duty to furnish them a reasonably safe place within which to work, and if the jury believes from the evidence that defendant failed to furnish such reasonably safe place within which the plaintiff might perform the work assigned to him, and the jury further believe that as the proximate result or consequence of such negligence, if any, in so failing to furnish a reasonably safe place in which to work, the jury should find for the plaintiff."

Appellant insists that the giving of this instruction, under the facts of this case, was error. We think that the rule which requires the master to furnish a safe place to work does not apply to cases where the prosecution of the work itself makes the place and creates the danger. The prosecution of the work in the instant case necessarily changed the place to work as the work progressed, and these changes often increased the hazard. The supreme court of Washington, in *Miller* v. *Moran Bros.*, 39 Wash. 631, 81 Pac. 1089, 1 L. R. A.

(N. S.) 283, 109 Am. St. Rep. 917, stated the rule in these words:

"The very nature of the work of building a ship necessitates constant changes. A place perfectly safe one minute may become extremely dangerous the next by the ordinary and necessary operation of the work, and without fault on the part of any one. A servant working in the capacity of this appellant knows all this, and must be held to be, to a certain extent, his own inspector. He cannot complain because the master, with less opportunity than he [to avoid the accident], has failed . . . to detect or anticipate an unex- ·pected occurrence."

This court recognized this rule in *Railroad Co.* v. *Williams*, 96 Miss. 373, 53 So. 619. Instruction No. 1 was fatal error and the judgment is reversed.

*Reversed and remanded.*