MISSISSIPPI CENTRAL RAILROAD COMPANY v. BENNETT.

[71 South. 310.]

1. MASTER AND SERVANT. *Injuries to servant. Tools and appliances. Knowledge by master. Burden of proof. Defective tools. Evidence. Sufficiency.*

   In order that the master may be held to have been negligent in furnishing the servant with unsafe tools with which to work, it must appear not only that the tool furnished was in fact defective to such an extent as to render it unsafe for the servant to use it, but it must further appear that the master knew, or by reasonable inspection thereof could have known, of the defect therein and the burden of proving such actual or constructive knowledge on the part of the master is on the servant when attempting to recover damages for an injury sustained by him by reason of a defect in a tool furnished by the master.

2. MASTER AND SERVANT. *Injuries to servant. Defective tools. Evidence. Sufficiency.*

   The mere fact though unexplained, that a splinter came from an anvil when struck does not amount to proof that the anvil was too hard and therefore defective and unsafe, nor does it follow even *prima facie*, from that fact alone that the master knew of the defect in the anvil, or could have discovered it by an inspection, reasonable or otherwise.

3. INJURIES TO SERVANT. *Liability of master. Evidence.*

   Under the facts as shown in this case the court held that the accident complained of was an unavoidable one and that the master was not liable.

APPEAL from the circuit court of Lamar county.
HON. A. E. WEATHERSBY, Judge.

Suit by A. H. Bennett against the Mississippi Central Railroad Company. From a judgment for plaintiff, defendant appeals.

The facts are fully stated in the opinion of the court.

*S. E. Travis*, for appellant.

The fact being established, we direct the court's attention to the law applying in such case. For the conven-

ience of the court, we submit excerpts from some of the authorities. Labatt states the rule as follows:

"The most frequent application of the so-called simple-tools doctrine is found in those cases which hold that the duty of the master in respect to simple tools is not continuous, and he is under no obligation to inspect simple tools which he has placed in the hands of his servants for use. And it has been held that no liability can be predicated on the master's failure to instruct a servant in the use of a simple tool.

"It does not seem entirely logical to say that the master is under no obligation to exercise ordinary care to furnish reasonably safe appliances, simply because those appliances chance to be a simple character. The more reasonable view would seem to be to place the non-liability of the master on the ground that any defect in a simple tool must be obvious to the servant, and any risk of danger therefrom must be held to be assumed by him; and this, indeed, is the view taken very frequently.

"Other cases dismiss the allegations of negligence on the part of the master by the statement that the defect was obvious, or was as obvious to the servant as it could have been to the master, without directly invoking the rule of assumption of risk. Decisions of this character would seem to be based upon the theory discussed in chapter XL, namely, that the servant's knowledge or ignorance of the risk involved determines the existence or absence of culpability on the master's part." 3 Labatt's Master & Servant (2 Ed.), sec. 924a.

We direct the attention of the court to the following notes under said section: "The law requiring the master to exercise ordinary care to provide reasonably safe tools and appliances for his servants has no application where the servant possesses ordinary intelligence and knowledge, and the tools and appliances furnished are of a simple nature. *Vanderpool* v. *Partridge* (1907 Neb.), 165, 13 L. R. A. (N. S.), 668, 112 N. W. 318."

"It is only machinery and appliances which are recognized as in their nature dangerous to employees using them, or working in proximity to them, as to which the employer owes a duty to the employee of looking out for his safety. *Lynn* v. *Glucose Sugar Ref. Co.* (1905), 128 Iowa, 501, 104 N. W. 577."

"The rule of employer's liability applicable to complicated and dangerous machinery does not apply to simple things like ladders. *Smith* v. *Green Fuel Economizer Co.* (1908), App. Div. 672, 108 N. Y. Supp. 45.

"In Missouri, where the servant does not assume the risk of dangers due to the master's negligance, it has been held that the servant assumes the risk due to defects in simple tools, and it would seem that the court must proceed upon the assumption that negligence cannot be predicated upon the furnishing of tools of this character, although they are defective."

"In *Blundell* v. *W. A. Miller Elevator Mfg. Co.* (1905), 189 Mo. 552, 88 S. W. 103, it was held that a servant assumed the risk of using a ladder without prongs to prevent it from slipping."

"In *Mathis* v. *Kansas City Stock Yards Co.* (1904), 185 Mo. 435, 84 S. W. 66, it was held that an engineer assumed the risk of injury of standing on a plank resting on the steam chests of two pumps, because the appliance was a simple one."

"A scythe is a simple tool, used by mankind from remote ages to the present for the cutting of grass, grain, and weeds, and it would be absurd to treat as an issue of fact the propriety of its use for such purposes on any kind of ground where the mower could stand. *Post* v. *Chicago, B. & O. R. Co.* (1906), 121 Mo. App. 562, 97 S. W. 233."

"The master may assume that employees using a simple tool will discover a defect resulting from its being worn out. *O'Brien* v. *Missouri, K. T. R. Co.* (1904), 36 Tex. Civ. App. 528, 82 S. W. 319."

"It has been repeatedly held that if injuries befall an employee from the use of a simple implement or contrivance of this kind (ladder) the master is not liable. *Hart* v. *Clinton* (1906), 115 App. Div. 761, 100 N. Y. Supp. 1092."

"The master is under no duty to inspect simple or common tools, or to discover or remedy defects arising necessarily from the ordinary use of such instruments. *Koschman* v. *Ash* (1906), 98 Minn. 312, 116 Am. Rep. 373, 108 N. W. 514."

We respectfully submit, in the light of the foregoing authorities, since the anvil is admitted to have been a simple tool or appliance, that there is no escape from the conclusion that no case was made out in appellee's favor, and that said motions should have been sustained for that reason.

*Tally & Mayson,* for appellee.

It is strenuously insisted by learned counsel for appellant in his brief, that appellee assumed the risk incident to working on the defective anvil and is not entitled to recover and this is predicated of the idea that the anvil comes within that category of implements denominated simple tools. Many citations are taken from Mr. Labatt on abstract principles, by which he undertakes to sustain this contention; but an examination of the facts in this record, we think, will fairly disclose that the voluminous citations are not applicable to the case at bar. It is not a question of simple tools *vel non* as to whether the appellee is entitled to recover. If he had a reasonable safe appliance or tool with which to work and for some reason that tool became no longer suited and it had to be substituted by another, then it devolved upon the appellant to furnish him with another tool that was reasonably safe. All the well considered cases that we have been able to find, as well as the text-books, support the contention that a promise to furnish other instrumen-

talities in the place of those from which the servant apprehends danger, or in the place of those that are no longer suited for the purpose, should be deemed equivalent in legal effect to a promise to remedy a defect in some instrumentality, the use of which is to be continued; Labatt's Master & Servant (1st Ed.), sec. 419.

A case strikingly similar to the case at bar is that of *Southern Kansas Railway Company* v. *Croker*, 13 Am. St. Rep. 320, 41 Kansas, 747, decided as long ago as 1886. The facts in that case were; Croker was employed as a section hand by the Railway Company. From the time of his employment until the 30th of March, 1886, he had been engaged in the ordinary duties of a section hand, doing all that was ordered to be done to keep the track in good repair. On the 30th., of March, 1886, in the afternon, he was engaged in breaking rock for ballast, using for that purpose, a stone hammer weighing three and a half pounds; the handle of the hammer was a green stick cut from the brush adjoining the track, and was crooked. He had complained to the section foreman about the handle being defective, he having been slightly injured before by the use of such a handle. The foreman told him to work with this one as it was and that he would get good handles in a few days. He struck a blow on a lime stone rock with the hammer and a small particle of the stone struck him in the eye and destroyed his sight. The court, in delivering the opinion, amongst other things, said. "The record showing that he had complained of the hammer, and the foreman had promised to procure a new and better handle, the duty of the company is plainly understood to be to furnish reasonably safe tools for doing this kind of work; these hammers were defective; a protest was made against their use; and a promise given that new handles would be forthcoming; and this promise was accompanied by an order to 'go ahead and work with them;' the work proceeded, and the injury was the result of the use of the defective handle of the hammer. The conclusion is irresistible that the Railroad Company

did not exercise that degree of care required by law in furnishing proper tools with which to do the work required of the section hands, and was guilty of negligence in requiring the use of defective hammers.''

We respectfully submit that no implement, appliance or instrumentality can be found that is simpler than the handle of a hammer or an ax. It inevitably follows then, that in furnishing instrumentalities of any kind, whether simple or complex, the duty devolves upon the employer to furnish safe ones of the kind with which the servant is provided, and that the question of simplicity is not a question that enters into it at all.

SMITH, C. J., delivered the opinion of the court.

This is an appeal from a judgment awarding appellee damages for an injury sustained by him while in appellant's employ, by reason of its failure to exercise reasonable care to furnish him with reasonably safe tools with which to work.

Appellee was an experienced blacksmith, working as such for appellant in its repair shop at Hattiesburg. About a week prior to the 20th day of February, 1914, the anvil furnished him by appellant with which to work broke, and upon his calling the attention of appellant's master mechanic and shop foreman thereto they decided to have it repaired and returned to appellee for further use, directing him to use, while this was being done, one of three other anvils, of which he was given the choice, not then in use and which had not been in use for some time. He selected one which he and the foreman thought was the best of the three and used it until he received the injury complained of. This anvil was of iron, faced with steel, about four inches of which steel facing was broken off ''on the horn end of it.'' The anvil was otherwise apparently in good shape, and the absence of this four inches of the steel facing did not interfere with its use. Appellee, while testifying as a witness at the trial, said:

"A. . . . I didn't want the anvil and I said something to Mr. Naylor about it, and he said, 'What are you going to do, knock off?' and I says, 'Mr. Naylor, I am not able to knock off,' and I had to go over there and get the anvil.''

Why he did not want the anvil does not appear, nor does it appear that appellee, the master mechanic, or the foreman considered the anvil defective in the sense that appellee would be in danger when using it.

On the 20th day of February, 1914, appellee, with the assistance of a helper, was engaged in cutting a five-eighth inch iron rod into two pieces, and had cut it "pretty well in two" when he shoved the cut portion over the edge of the anvil so the helper could break it off by striking it with a sledge hammer. This the helper proceeded to do, striking, according to the evidence for appellee, both the rod and the edge of the anvil a glancing blow, and when he did so a small splinter from either the rod or the anvil flew up and struck appellee in the eye, resulting in his losing the sight thereof. On the evidence, some of which is here omitted, whether this splinter came from the rod or anvil was a question of fact for the jury if the case had been otherwise one for their consideration. This blow was struck not on the broken part of the anvil, but on the edge of that part of the facing thereof that was apparently in good shape. No evidence was introduced tending to show that the facing of this anvil was defective, except that the anvil was exhibited to the jury, and appellee himself testified that it was too hard, but when asked how he knew this, answered, because of the splinter flying from it.

The uncontradicted evidence for appellant is that it is impossible to manufacture an anvil that will not be liable to splinter when struck on the edge with a sledge hammer in the manner in which this anvil was struck on the occasion in question. At the close of the evidence appellee requested a peremptory instruction, which was refused.

In order that the master may be held to have been neg-ligent in furnishing the servant with an unsafe tool with which to work, it must appear not only that the tool fur-nished was in fact defective to such an extent as to ren-der it unsafe for the servant to use it, but it must further appear that the master knew, or by a reasonable inspec-tion thereof could have known, of the defect therein, and the burden of proving such actual or constructive know-ledge on the part of the master is on the servant when at-tempting to recover damages for an injury sustained by him by reason of a defect in a tool furnished by the mas-ter. *Hope* v. *Railroad Co.*, 98 Miss. 829, 54 So. 369, and authorities therein cited.

This burden was not met by appellee in the case at bar, for we are not prepared to hold that the mere fact, even though unexplained, that this splinter came from the an-vil amounts to proof that the anvil was too hard and therefore defective and unsafe; but even should we so hold, it does not follow, even *prima facie,* from that fact alone that appellant knew of the defect in the anvil or could have discovered it by an inspection, reasonable or otherwise.

On the evidence it seems clear that appellee's injury was the result of an unfortunate accident for which no one was to blame, unless it was the helper, who, accord-ing to appellee, should not have struck the anvil in break-ing the rod, but should have struck the rod only. The peremptory instruction requested by appellant should have been given.

*Reversed and remanded.*