LAMPTON *v.* ATKINS.

[92 South. 638, En Banc. No. 22313.]

MASTER AND SERVANT. *Master's knowledge of defective appliance must be shown.*

In order that the master may be held to have been negligent in furnishing the servant with an unsafe appliance, it must appear that the master knew, or by reasonable inspection thereof could have known, of the defect therein, and the burden of proving such actual or constructive knowledge on the part of the master is on the servant when attempting to recover damages for an injury sustained by him by reason of a defect in an appliance furnished by the master.

Holden and Ethridge, JJ., dissenting.

APPEAL from circuit court of Tishomingo county.

HON. C. P. LONG, Judge.

Action by C. C. Atkins against the Tishomingo Gravel Company, revived against Thad B. Lampton, receiver. From judgment for plaintiff, defendant appeals. Reversed and rendered.

*Fulton Thompson* and *R. H. & J. H. Thompson,* for appellant.

To the court's first inquiry as to the application to the case at bar or the decision in *Hope* v. *Natchez, etc., Railroad Company, et al.,* 98 Miss. 823; s. c., 54 So. 369, we answer, the decision is, we feel assured, controlling, if it is not to be reversed. We cannot think it should be reversed because it is well supported by authority and its reasoning

is sound. The last sentence of the opinion in the Hope case states its substance and is in these words: "The law presumes that the master has discharged his duty to furnish the servant with reasonably safe tools and appliances, and except as provided by statute, and in cases wherein the doctrine of *res ipsa loquitur* applies this presumption is not overcome by mere proof of injury to the servant by reason of a defective appliance."

The presumption that a master has discharged his duty to furnish his servant with reasonably safe tools and appliances is applicable to the case at bar, and the presumption was not overcome by mere proof of injury to the servant by reason of a defective appliance (certainly not, if the defect be merely inferred) unless the case falls within one of the two exceptions mentioned in the opinion delivered by this court in the Hope case. These exceptions are: (a) Where a statute changes or prevents the application of a presumption. There is no such statute in this state and this ends the argument on that point. (b) Where the doctrine of *res ipsa loquitur* applies to the case.

Does the doctrine apply to the case at bar? As the court has made this inquiry the subject-matter of an independent question, we will pretermit its discussion until in due course we reach the court's last proposition.

Third. The court's second inquiry is in these words: "In order for the master to successfully defend against an injury to this servant caused by a defective appliance, shown to have been defective when furnished by the master to the servant, what must he show if anything, with reference to care in purchasing and furnishing of such appliance to the servants?"

Unless a plaintiff has proved at least a *prima-facie* case under the law applicable to his alleged cause of action, a defendant does not have to show or prove anything whatever in order to defend. This statement, we think, needs no argument in its support.

Fourth. Does the principle of *res ipsa loquitur* apply? To determine whether the principle applies, we should first

get the facts of the case well in mind and determine what if anything, in this case, the doctrine can be claimed to prove. It must not be assumed because of the explosion that the fuse was defective and the master, therefore, guilty of negligence, because the fuse was made to be exploded; it was ignited by the plaintiff himself and the explosion was the result of the fuse having been ignited. The inquiry is whether the explosion occurred too soon after the fuse was ignited, and this in turn is based upon testimony necessarily uncertain; the estimate of a witness or witnesses of the lapse of past time, and that too of a very short time (less than three minutes) where attention was not directed to the passage of time before the explosion. We submit the doctrine of *res ipsa loquitur* never applies unless the thing which speaks for itself is admitted or proved beyond dispute or cavil.

The doctrine has a much narrower application between master and servant than between other litigants. 3 Bouvier's Law Dictionary (Rawls' Third Revision), p. 2908, title, *"Res Ipsa Loquitur."*

The authorities cited by the attorneys for the appellant in the case of *Alabama, etc., Ry. Co.* v. *Groome,* beginning near bottom of page 203 in 97 Miss., show that the doctrine has no application to the case at bar. It is true that in the Groome case this court applied the doctrine to a case between master and servant, but in that case the defective instrument which caused the injury was in the exclusive possession and control of the master, and the servant had nothing to do with it.

Our conception is that the *res ipsa loquitur* rule is materially limited in cases between master and servant, because of undisputed law to the effect that the doctrine has no application where the defendant is not shown to have had the exclusive possession and control of the tool, appliance or thing which caused the injury suffered by the plaintiff. *Wolfe* v. *Downey,* 164 N. Y. 30; s. c., 51 L. R. A. 241; *Actiesselskabet Ingrid* v. *Central, etc., Railroad Co. of New Jersey,* 216 Fed. 72, 991; s. c., Lawyers Re-

ports Annotated, 1916, B. p. 716, 722; 25 Corpus Juris, sec. 38, p. 205.

In the case at bar if the fuse was under the exclusive control of anybody it was under the control and management of the plaintiff, Atkins.

*Boone & Wortham,* for appellant.

It will be noted that the declaration in this case followed the correct principle of law by declaring the duty of appellant to appellee to be to use due diligence and reasonable care, and the declaration further admits the legal principle laid down in the Hope case that defendant knew it was dangerous, or with reasonable and proper inspection could have known that it was dangerous. In the *Hope case,* 98 Miss., at page 892, this language is used: "When a servant is injured by reason of a defect in a tool or appliance furnished him by the master one of the essential elements of negligence on the part of the master is knowledge, actual or constructive, of the existence of the defect in the tool or appliance. Consequently, the burden of showing such negligence is upon the servant." *Bennett case,* 111 Miss. 163; *Richmond & D. R. Co.* v. *Elliott,* 149 U. S. 266, 37 L. Ed. 732.

In the case of *Penn. Co.* v. *Congdon,* 38 Am. St. Rep. 257, the rule is stated this way: "In case the defect was latent and unknown either to the employer or the employee, and could not be discovered by evidence, then neither could be held to be in fault."

In 3 Labatt's Master and Servant (2 Ed.), sec. 1025, it is said: "A servant cannot recover for injuries caused by abnormally dangerous conditions unless he proves that the existence of those conditions was either actually known by the master or would have been known to him if he had exercised that degree of watchfulness which he was bound as a prudent man to exercise under the circumstances." Section 1058, in said Vol 3.

I do not know whether there was a defect in this fuse or not, but if there was, it evidently was one that could not be discovered by reasonably careful inspection.

*W. J. Lamb,* for appellee.

The first question propounded by the court is this: "What application, if any, has *Hope* v. *Railroad Company,* 98 Miss. 829, 54 So. 369, and other authorities along the same line, to that state of facts?" Now replying to the question propounded above, we submit that the principle contained in the case of *Hope* v. *Railroad Company, supra,* and such other authorities on the same line, have no bear· ing whatever on the case at bar. It is held by all authorities that persons using dangerous agencies, such as dynamite, are required to use the higest degree of care and caution to prevent injuries. *Hamblin* v. *Gano,* 76 So. 633; *McTighe* v. *Johnson,* 114 Miss. 862. The rule announced above in the two Mississippi cases are sustained by all authorities in text books and decisions of the court. *Murray* v. *Drug Co.,* 100 Miss. 260; *Edward* v. *Haynes-Walker Lumber Co.,* 113 Miss. 383; *Sea Food Co.* v. *Alves,* 117 Miss. 9; *Railroad Co.* v. *McCaskel,* 118 Miss. 629; *St. Louis, I. M. & S. R. Co.* v. *Neely,* 63 Ark. 636, 40 S. W. 130, 37 L. R. A. 616; United States in *Fletcher* v. *Baltimore & Potomac Railroad Co.,* 168 U. S. 18, Sup. Ct. 35, 42 L. Ed. 411; Note to *St. Louis, I. M. & S. Railroad Co.* v. *Jackson,* (Ark.), in 31 L. R. A. (N. S.) 980; *Railroad Co.* v. *Dees,* 121 Miss. 438.

Now in view of the authorities cited above from this court, we respectfully submit that there was no assumption of risk on the part of the appellee in this case, and in any view of the case, the appellee was entitled to have the question of assumption of risks to be determined by the jury. We will now refer the court to other authorities, which we contend sustains our contention that there was no assumption of risks on the part of the appellee. 3 Labatt's Master & Servant (2 Ed.), sec. 1178; *Hough* v. *T. & P. Railroad Co.,* 100 U. S. 213, 25 L. Ed. 612; Labatt, sec. 1189; *Alton Line & Cement Co.* v. *Calvey,* 47 Ill. App. 343; *Rankel* v. *Buckstaff-Edwards Co.,* 138 Wis. 442, 20 L. R. A. (N. S.) 1180; *Charron* v. *Union Carbide Co.,* 151 Mich. 687; Labatt, sec. 1186a.

In the same volume of Labatt, sec. 1187, the footnotes give a large number of decisions in which the doctrine now under discussion has been affirmed in relation to injuries caused by the abnormally dangerous qualities of the instrumentalities themselves, and we respectfully refer the court to this collection of cases, and among this list will be found: Defective appliances for dealing with explosives. *King* v. *Morgan,* 48 C. C. A. 507. In the case at bar, the appellee's opportunities of knowing the character of fuse that he was using was inferior to those of the master.

In 4 Labatt's Master & Servant (2 Ed.), sec. 1329, p. 3797, the text said: "As a matter of ultimate analysis, it will be found that the logical basis of the doctrine which thus places the master and servant upon different footings in regard to the imputed knowledge of risks is to be found in the fact that it is the special and appropriate function of the former to furnish and supervise the instrumentalities of his business and the special and appropriate function of the servant to use those instrumentalities. The duty of making a reasonable, careful examination of the instrumentalities is a natural and necessary incident of the former function, but not of the latter."

In the case at bar, there was no care nor precaution or examination or investigation of any kind on the part of the appellant. In 4 Labatt's Master & Servant (2 Ed.), sec. 1364, p. 3935, the text says: "The servant does not stand on the same footing with the master. His primary duty is obedience, and if, when in the discharge of that duty he is damaged through the neglect of the master, it is but meet that he should be recompensed. This essential inequality of the parties is deemed to warrant the deduction that a prudent man has a right within reasonable limits, to rely upon the ability and skill of the agent in whose charge the common master has placed him, and is not bound, at his peril, to set his own judgment above that of his superior."

The master and servant do not stand upon an equal footing, even when they have equal knowledge of the dan-

ger. *Shortel* v. *St. Joseph,* 104 Mo. 114, 24 Am. St. Rep.
317. The employee may rely upon the superior knowledge
and experience of the employer, unless the defect is so
glaring and extreme as to make the danger of using the
utensil apparent to anyone. *Jenney Electric Light Co.* v.
*Murphy,* 115 Ind. 566; 3 Labatt's Master & Servant (2
Ed.), sec. 1041, p. 2750; *Tissue* v. *B. & O. R. R. Co.,* 112
Penn. 91, 56 Am. Rep. 310.

Applying this test to the case at bar, we can only
have one result, and that is that the appellant was guilty
of the grossest of negligence in taking no precautions to
protect the appellee. The appellee had a right to rely on
his employer to perform his duty in every respect to pre-
vent him from being injured. 18 R. C. L., p. 689, sec. 176.

The appellee had the right to assume that the appellant
was furnishing him safe material with which to do his
work, and had used all due diligence and care to pro-
tect him. *Barto* v. *Iowa Telephone Co.,* 126 Ia. 241, 101 N.
W. 876, 106 Am. St. Rep. 347; *Barto* v. *Iowa Telephone
Co.,* 126 Ia. 241, 101 N. W. 876. Under the general proposi-
tion of law announced above, we respectfully submit that
the appellee in this case did not assume the risk, and that
his master did not discharge his duty to prevent injury
happening to him. 18 R. C. L., p. 666, sec. 159; *Smith* v.
*Oxford Iron Co.,* 36 Am. Rep. 535; *Spelman* v. *Fisher Iron
Co.,* 56 Barb. 151.

The next question propounded by the court is as follows:
"In order for a master to successfully defend against an
injury to his servant caused by a defective appliance, shown
to have been defective when furnished by the master to the
servant, what must he show, if anything, with reference to
care in purchasing and furnishing of such appliance to
the servant?"

Replying to this question, we will say that in Labatt's
Master & Servant (2 Ed.), sec. 1055, p. 2781, under the
head "Rule Where the Instrumentality is Procured by
Purchase or Otherwise from Another Person," we have the
proposition laid down as follows: That the fact of the ap-

pliance being of an approved pattern and having been bought from a reputable maker is at least *prima-facie* evidence that the defendant was not negligent in requiring his servant to use it, but under this proposition there are only very few authorities cited to sustain this contention, and under the same section, towit: Section 1055, p. 2786.

We have the following: "A doctrine less favorable to the master than that applied in the cases thus far cited has been applied in some jurisdiction. There are at least two very weighty reasons why the theory that a master is entitled, as a matter of law, to rely on the quality of the appliances obtained from a reputable manufacturer should be rejected. One of these is that such a theory is essentially inconsistent with the doctrine of non-delegable duties. See chapter 54, *post*. As between master and servant, this doctrine should, it is submitted, always be regarded as controlling whenever it comes into conflict with that which declares that the employer of an independent contractor is not liable for his negligence. . . . The other reason is, according to the rule adopted by most of the authorities, the servant has ordinarily no right of action against the manufacturer, and, if he cannot recover from his master, he cannot recover at all. Assuming the defect which caused the injury to have been discoverable by the exercise of ordinary care, some one ought, in fairness, to be held responsible fo. its existence, and it is a mere mockery of justice to absolve the master simply on the ground that he was justified in trusting to the skill and diligence of a person who, if that skill and diligence were, as a matter of fact, not exercised, is not iable to the servant because there is no privity of contract between them."

In the case at bar the master absolutely showed nothing, no care, no discharge of duty, no interest, no precaution, not even the kind of fuse in use, how long it had been on hand, nor whether it was of standard quality or not, but relied, to defend themselves against their negligence and neglect of duty, on the proposition that the appellee said that the injury was caused by his negligence.

In the case of *Morton* v. *Detroit D. C. & A. R. Co.,* 81 Mich. 423, 46 N. W. 111, is a case where the extent of the master's duty to test the strength of a chain was discussed and the Servant's duty to test the strength of a chain was discussed. *Richmond & D. R. R. Co.* v. *Elliott,* 149 U. S. 266, 37 L. Ed. 728; *Petroleum Iron Works* v. *Boyle,* 102 C. C. A. 579; *Sharpley* v. *Bright,* 205 Penn. 253, 54 Atl. 896; 3 Labatt's Master & Servant (2 Ed.), sec. 1059, p. 2799; *Hooe* v. *B. & N. Street R. R. Co.,* 187 Mass. 67, 72 N. E. 341; *Hedlum* v. *Holy Terror Mining Co.,* 16 S. Dak. 216, 92 N. W. 31.

In the case at bar, the appellant, the master, absolutely failed to perform every duty required of him by law, and makes no attempt in the record to excuse or show why he failed to do his duty. Now, in view of the authorities cited above, we respectfully submit that the appellee is entitled to recover on the proposition submitted in the second question by the court.

Smith, C. J., delivered the opinion of the court.

The appellee sued the Tishomingo Gravel Company in the court below for damages for an injury received by him while employed by that company, and because, as he alleges, of the company's negligence. While the suit was pending in the court below Lampton was appointed receiver of the Gravel Company and the suit was revived against him as such.

The appellee's duty was to dig holes in the company's gravel pit, and when they were of sufficient depth to dig other holes at the bottom of, and at right angles therewith, in which he would place and explode dynamite by means of a fuse, and the declaration alleges that he was injured by the premature explosion of a stick of dynamite caused by "a fuse which was defective and faulty, and which was unknown to your plaintiff, and which was known or could have been known by a reasonable inspection on the part of the defendant." The fuse is in the form of a cotton rope

fifty feet long, with a thread of powder running through the center, is supposed to burn one foot per minute, and when used a sufficient length thereof is cut off for the intended use. On the occasion of the appellee's injury he dug a hole about twenty feet deep, and, desiring to explode a stick of dynamite in the bottom thereof, so as to loosen the gravel and enable him the easier to continue digging the hole, he dug a smaller hole at the bottom thereof about three feet deep, put the dynamite in it, attached to it a cap and three or four feet of the fuse which he had cut off himself. He lighted the fuse, and signaled his helper to draw him up, which the helper did by means of a windlass and rope. When he reached the surface, which he did in about forty-five seconds after lighting the fuse, he was proceeding to remove the windlass when the dynamite exploded, throwing small pieces of rock to the surface, one of which struck and put out one of the appellee's eyes. The appellee when testifying as a witness in his own behalf, was asked if the fuse was defective, and he answered that it was, assigning as his reason for so stating that "it is supposed to burn a foot a minute." And, on being asked, "If that fuse was not defective, would that explosion have taken place in that length of time?" he answered, "No," and on being asked if there "was anything about that fuse about which you could look at it and tell whether it was defective," answered "No."

The appellee introduced no testimony other than his own, but one of the appellant's witnesses testified on cross-examination that, when a fuse burns less than a foot a minute, it is defective, in that it is "scarce of powder."

The fuse was of the same kind and character as that which the Gravel Company was accustomed to supply its employees, and the evidence does not disclose either that the defect therein, if such there was, was known to the company, or that it could have been discovered by a reasonable inspection of the fuse.

On this evidence the court below should have complied with the appellant's request for a directed verdict in his

· favor, for, conceding for the sake of the argument that the fuse was in fact defective, in order for the appellee to recover it must appear from the evidence, as alleged in the appellee's declaration, that the Gravel Company knew of this defect, or could have discovered it by a reasonable inspection of the fuse. *Hope* v. *Railroad Co.*, 98 Miss. 829, 54 So. 369; *Railroad Co.* v. *Bennett*, 111 Miss. 163, 71 So. 310.

Reversed, and judgment here for appellant.

*Reversed.*

HOLDEN, J. (dissenting). The premature explosion which destroyed the eye of appellant was caused by one of . two things, viz., the fuse furnished by the master was defective, or it was a different kind from that usually furnished, in that it was manufactured to explode quicker than the kind that was furnished daily by the master, and properly presumed by plaintiff to burn only a foot per minute. On the first theory it was for the jury to determine from all the facts and circumstances and the reasonable inferences to be drawn therefrom whether the master exercised reasonable care in the inspection of the dangerous agency. And on the second theory it was a question of fact for the jury as to whether the master was negligent, in the absence of any showing of due care, in furnishing a different kind of fuse from that which the servant had a right to believe was the same kind, as to rate of burning, as usually furnished for the work. Thus "the fuse was defective or faulty," as charged and proven.

I do not think the Hope and Bennett Cases cited in the main opinion are in the way of the views I maintain. A careful study of these cases and the one at bar will reveal the difference between them. The decision now rendered puts the servant at the mercy of the negligent master who furnishes a defective or different instrumentality without notice, which causes the injury. He is not required to exonerate himself by showing reasonable care, which fact is peculiarly within his knowledge.

ETHRIDGE, J., joins in this dissent.