BARRON MOTOR CO. *v*. BASS.

(Division B. Oct. 16, 1933.)

[150 So. 202. No. 30697.]

T. J. Wills, of Hattiesburg, for appellant.

**George W. Currie** and **Currie & Currie,** all of Hatties-
burg, for appellee.

Argued orally by **T. J. Wills,** for appellant, and by **Dan Currie,** for appellee.

**Griffith, J.,** delivered the opinion of the court.

Appellant is the Ford distributing agent at Hattiesburg, and has a large establishment for that business and for the storage and repair of automobiles and trucks. The main building is of two stories, and upstairs there is housed the principal equipment and machinery for making repairs. Included in this equipment is a welding table two and one-half feet wide and six feet long, with a level, smooth, steel top or platform. The second floor of the repair department on the occasion in question was under the general charge or supervision of a foreman named Burns. The welding machine at the steel table was usually operated by a mechanic named McCohn. Appellee was an ordinary mechanic working usually downstairs, but, when welding was to be done on any work being handled by appellee, it was his duty to take the part or parts to be welded up stairs and to the steel welding table where McCohn, assisted by appellee, would do the welding.

On this occasion appellee was directed to take a windshield up stairs and there have brackets welded on each side of the frame thereof. When appellee reached the upstairs and reported to Burns, the foreman, that he had a windshield upon which welding was to be done, the foreman told appellee that McCohn, the welder, was then busy upon another task at another place, and that he (the foreman) would aid in the welding, whereupon appellee took the windshield to the welding table, and, while appellee held the windshield in proper position on the table, the foreman used the welding torch. When one side of the windshield had been welded, it was neces-

sary to turn it around, and in doing so appellee's hand came in contact with a drawing knife which was then on the table, and appellee was injured. The drawing knife was not on the table when appellee reached the table and placed the windshield thereon; the fact being that, as appellee approached the table and placed the windshield on it, Burns, the foreman, followed along behind him and placed the drawing knife, without the knowledge of appellee, on the table immediately to the back of appellee. The proof is adequate to show that Burns was on the said second floor the superior agent of appellant, and was charged with the master's general duty to use reasonable care to furnish reasonably safe places to work; that is to say, Burns was the vice-principal of the master in that respect.

Appellee sued to recover for the injury caused as aforesaid and recovered judgment, and upon this appeal therefrom the main contention by appellant is that it should have had the peremptory instruction requested by it on the ground that, when the foreman, Burns, placed the drawing knife on the table in such close proximity to the work then to be done as to injure appellee while doing the work, Burns, the foreman, was not, in respect to the act in placing the drawing knife on the table, a superior agent or employee, but was a fellow-servant; that while usually, in the discharge of his duties, Burns did not do manual labor or assist other workers in such labor, and while generally his duties were to supervise and direct the work and all its incidents on that floor, yet at the particular occasion he had gone to assist appellee, a mechanic, in a particular manual operation, and was as to all things happening thereinabout a fellow-servant with appellee. In short, appellant relies on the doctrine of dual capacity.

In the recent case, Gulf Refining Co. v. Ferrell, 165 Miss. 296, 147 So. 476, 478, it was said: "It is not only a nondelegable duty of the master to use reasonable care to provide a safe place for the servant to work in

the furtherance of th emaster's business, but the master may not be relieved of liability in such cases ordinarily by shifting the responsibility to a fellow-servant, and the negligence of the fellow-servant, in this case, is imputable to the master." Also in Gulf, M. & N. R. Co. v. Brown, 143 Miss. 890, 895, 108 So. 503, 504, this court said: "Where the reasonably safe place to work doctrine applies, the fellow-servant doctrine has no application, because of the rule that the duty of the master in that respect is nondelegable." Based upon the foregoing statements, and upon like statements found in many other cases and in several texts, dealing with the subject, appellee argues that a foreman, superintendent, or other vice-principal may never divest himself of his character as such by anything that he may temporarily do, so long as his acts are within the scope of his employment and in the furtherance of the master's business; in other words, that there is no such thing as a dual capacity in which such a superior employee may act in the course of his employment; and the courts of several states expressly so hold.

There is perhaps no other branch of the law than this wherein it is more essential to have in mind the facts of the case when interpreting either the particular terms or the general language used by the court in deciding that case. If we would regard the terms "fellow-servant" and "dual capacity" merely as convenient expressions and not as possessing within themselves a controlling potency, we may largely avoid the danger of becoming lost in language. In this case, as is disclosed by the foregoing statement of the facts thereof, we are concerned with legal terms or phraseology only in connection with the duty of the master to use reasonable care to furnish the servant with a reasonably safe place to work. And in that particular connection the inquiry gets back, whatever names we may use, to the general and well-settled principle that the obligation rests upon the servant, and not upon the master, to look after the

safety of the place at which to work as to all temporary dangers which ordinarily arise in the usual progress of the particular work—which in ordinary course are part of the immediate and intimate incidents of the details of that work as the particular operation moves forward in its performance. And, when two employees work side by side on a task of manual labor, the same obligation, above stated, in regard to the safety of the place, rests upon each of them, and thus neither of them may look to the master beyond what one of them could have required or demanded had he worked on that particular task alone. And, since no obligation, in the stated respect, rests upon the master in the precise situation mentioned, none is brought into the equation because the coworker in the particular manual operation in question happens to be a foreman or a superior in rank to the other co-worker so engaged. The foreman or superior servant there does not bring liability against the master, because there is none, in such a situation, to be brought; from which it follows that the superior servant, while actually and actively engaged in a definite task of manual labor in immediate co-operation with a coworker, is, as to all the aforesaid ordinary incidents of that work, not a superior, but is, in legal effect, an ordinary employee or laborer, and hence the convenient use there of the terms "fellow-servant" or "dual capacity."

And the general principle, above stated, as regards the duty of the employee to look after the safety of the place during the progress of the work, and the limite1 extent to which that principle operates, furnishes at the same time the correct test as to when the relation of foremn or superior employee ends and that of fellow-servant begins. It begins when and not until the superior employee actually and actively engages in the particular manual work which gives existence to the changed relation; it begins when the progress of the manual work begins; and thus the question here is:

When was it in this case that the foreman actually and actively engaged in the manual work upon which he and appellee were laboring? Had the foreman actually engaged upon the manual work, had it begun in its progress, when he left his place and started towards the welding table, and did it included the time when, in passing around that table to the rear of appellee, the foreman laid the drawing knife on the table?

We might well answer that the time and the act last mentioned would be included if the drawing knife had any proper use in, or connection with, the task of manual labor upon which the coworkers were about to enter, or was in fact to be used in that task. But such, of course, was not the case, and we are of the opinion that the time cannot be extended back so as to include a material act of such importance as to be a controlling feature in this case when that act, to-wit, the laying of the drawing knife on the table, had no appropriate connection with the manual work to be undertaken, and which, therefore, was not a legitimate part either of the beginning or of any subsequent stage of the progress of the work according to the ordinary, usual, immediate, and intimate incidents of the particular manual work taken in hand. The peremptory instruction requested by appellant was properly refused.

Appellant complains of the following instruction granted at the request of appellee: "The court instructs the jury for the plaintiff that the law imposed upon the defendant the duty to furnish the plaintiff a reasonably safe place in which to work when he began work and to exercise reasonable care to keep the same in a reasonably safe condition and this duty was a continuing and non-delegable duty." The complaint against this instruction is that the jury were thereby informed that the duty of the master is absolute to furnish the employee a reasonably safe place to work; and another instruction granted to appellee involved the same general statement. The instruction is erroneous; but the error finds

its counterpart in many statements in like terms in the reported cases not only in this court but in many others, and is found also in the text-books. This inaccuracy of language has simply passed into some of the opinions and into some expressions in the books by way of oversight, for, upon attention being squarely directed to the question, all must agree with what was said by this court in Anderson v. McGrew, 154 Miss. 291, 294, 122 So. 492: ''This instruction is inaccurate for the reason that the master's duty to furnish his servant with a reasonably safe place in which to work is not absolute, but is to exercise reasonable care to furnish the servant with a reasonably safe place in which to work.''

The error in the two instructions, erroneous on the point mentioned, will not work a reversal in this case, however, because the act which made the place unreasonably unsafe was not a neglect to take reasonable care, was not a negligent omission or failure, to act, but was the actual or affirmative conscious act of the master himself, done by the hand of the person there standing in his authorized place and stead, his vice principal.

Affirmed.