# GULFPORT CREOSOTING CO. *v.* WHITE.

(Division B. Oct. 22, 1934. Suggestion of Error Overruled, Nov. 5, 1934.)

[157 So. 86. No. 31365.]

Ford, White & Morse, of Gulfport, for appellant.

Gex & Gex, of Bay St. Louis, and **O. J. Dedeaux,** of Gulfport, for appellee.

**Griffith, J.**, delivered the opinion of the court.

Appellee was employed by appellant to tighten large door bolts at the end of a long cylindrical vat about seven feet in diameter, and to do this work appellee was furnished with a ratchet wrench, weighing about thirty-five pounds, with a handle some three feet in length. This wrench was made up of a spring, a ratchet sometimes called a dog, and a cylinder with ratchet teeth or sockets, all of which parts are inclosed. There was an opening in this inclosure which permitted the head of the bolt to enter; so that when the wrench is placed upon

the bolt and the handle of the wrench is worked, the bolt will tighten without the necessity of replacing the wrench upon the bolt for each manipulation of the handle. On the occasion in question appellee had placed the wrench upon the head of a bolt and applied manual force to the handle of the wrench, and the wrench slipped, as he says, causing the handle unexpectedly to strike and injure him. The testimony discloses that when the handle of the wrench is manipulated contrariwise to the direction in which the bolt is to be turned, as must be done to get a new hold, there will be a click, or a series of clicks, caused by the pressure of the spring operating upon the dog, when the dog falls into its appropriate place in the ratchet arrangement, and that it is necessary to give due attention to the clicks both in the matter of the proper operation of the wrench and in regard to whether the tool is in good order and is properly working. The sole negligence charged in the declaration was an alleged defect in the wrench.

There were only two witnesses for appellee, himself and another, introduced as an expert. There is no direct testimony in behalf of appellee that the wrench was, in fact, in any way defective or out of order, appellee relying upon the fact that the accident occurred, and upon his testimony, and the rather inconclusive testimony of the expert, that the injury would not have occurred had the wrench been in good order. There is no testimony that the employer had any actual knowledge of the defect, if there was a defect, and no testimony as to how long the wrench had been out of order, if it was out of order. So far as the testimony shows, the disorder may not have come into existence until the moment of the accident, in fact, all of the testimony for appellee, when taken together with that part of the testimony for appellant which is undisputed, is consistent with the theory last mentioned, if there were any defect at all.

But of the testimony, more will be briefly said later in this opinion.

It is the universal rule wherever the common law prevails that the duty of the master in regard to tools and places to work is not that of an insurer, is not an absolute duty, but is simply to exercise reasonable care to furnish the servant with reasonably safe tools and appliances, and likewise as to a safe place to work. 39 C. J., p. 313 et seq.; Mobile & O. Railroad Co. v. Clay, 156 Miss. 463, 482, 125 So. 819; and other cases hereinafter cited. And, in accordance with that rule, it is the settled law in this state that when an injury is claimed to have resulted because of a defective tool, two elements are necessary to be proved by the party seeking recovery: (1) That the tool was in fact defective; and (2) that the master had knowledge, actual or constructive, of the defect at the time of the injury. In order to show constructive knowledge, it is necessary to prove (a) that the defect was one which could have been discovered by a reasonably careful inspection by a competent person, and (b) that the defect had been in existence for a sufficient length of time to have afforded the master a reasonable opportunity to make the examination or inspection. Hope v. Railroad Co., 98 Miss. 822, 829, 54 So. 369; Alabama & V. Railway Co. v. White, 106 Miss. 141, 63 So. 345; Mississippi Cent. Railroad Co. v. Bennett, 111 Miss. 163, 170, 71 So. 310; Lampton v. Atkins, 129 Miss. 660, 92 So. 638.

The only instruction requested and obtained by appellee upon the law as to the duty of the master is in the following words:

"The court instructs the jury for the plaintiff, that it was the duty of the defendant in this case to furnish the plaintiff with a reasonably safe tool with which to do his work, and if you believe from a preponderance of the evidence in this case that the wrench furnished to the plaintiff with which to do his work was defective or

worn, and that such defects were the proximate cause of the injury complained of, if you further believe from the preponderance of the evidence that plaintiff was injured as testified to by him, then it is your duty to find a verdict for the plaintiff.''

In Hooks v. Mills, 101 Miss. 91, 100, 57 So. 545, the error in that instruction was pointed out, and there it was said that the duty of the master is not absolute, but is simply to exercise reasonable care. Again, in Anderson v. McGrew, 154 Miss. 295, 122 So. 492, attention is called to the same error, and so in Barron Motor Co. v. Bass, 167 Miss. 786, 150 So. 202, and in McLemore & McArthur v. Rogers, 169 Miss. 650, 659, 152 So. 883. It is true that those cases dealt with the question of safe places to work, but the rule is exactly the same in the matter of furnishing tools.

And the same feature of omission in respect to the essential element of reasonable care persisted throughout in the proof offered in behalf of appellee. He relies, as he frankly argues, upon the doctrine of res ipsa loquitur and cites with confidence Godley v. Hines, 123 Miss. 560, 86 So. 289, 516; also Mobile, J. & K. C. Railroad Co. v. Hicks, 91 Miss. 352, 46 So. 360, 124 Am. St. Rep. 679; Alabama & V. Railway Co. v. Groome, 97 Miss. 201, 52 So. 703; Gulfport & M. C. Traction Co. v. Hicks, 116 Miss. 164, 76 So. 873. But there is no legal magic in the expression res ipsa loquitur, and whatever the phraseology or terms that may be used, there is at last no way or method by which to successfully avoid or maneuver away from the necessity of proving the essential element that the master failed to exercise reasonable care. The doctrine of res ipsa loquitur does not in the slightest modify or abrogate that principle of the substantive law that the master is liable only for a want of reasonable care, nor does it in the slightest dispense with the requirement that such a want of care must be proved; the

doctrine has reference solely to a method or means by which, in a proper case, to make that proof.

When, therefore, an injury is alleged to have resulted because of the failure of the master to exercise reasonable care to furnish his servant with a reasonably safe tool, and this is the precise point and none other with which we now deal, and the doctrine of res ipsa loquitur is sought to be applied, the doctrine is not available, as sufficient within itself, to sustain a verdict unless and until the following three elements are disclosed in proof: (1) That the happening was such in its nature that prima facie it would not have occurred otherwise than because of a defect in the tool; (2) that the defect was one which in its nature would substantially warrant the conclusion that it could have been discovered upon a reasonable examination by a competent person; and (3) that the defect was one which in its nature would substantially warrant the conclusion that it had existed for a sufficient antecedent period as to have furnished a reasonable opportunity to the master for inspection and examination. The above statement is obviously the most liberal that can be made of the applicability of the doctrine of res ipsa loquitur in the matter of furnishing tools and appliances, without trenching upon the settled rules of the substantive law which have firmly fixed the measure of duty required of the master; and of the stated elements, the second and third are equally essential with the first, for manifestly, if either of them were eliminated or omitted, the result would be to subject the master to the substantive liability of an insurer or warrantor against defects, when the master is not an insurer and has no such absolute obligation. These two elements were recognized as the important considerations in Godley v. Hines, supra, so strongly relied upon by appellee, as may be seen from the language of the court on the last page of its opinion.

Taking up briefly the three elements in their order, we have already mentioned that there is no express or direct proof that the wrench was actually defective or out of order. The proof by appellee, and the expert witness introduced by him, was that the accident happened, and that it would not have happened had the wrench been in good order; and yet the expert witness admitted upon cross-examination that an accident might happen when the manual force is applied to the handle and the bolt is not as tight as the operator supposed it to be; and finally and at the end of the cross-examination of the expert, he declined to definitely commit himself to the opinion that the wrench was in bad condition; whereas the proof on the part of appellant is that when the wrench was brought to the repair shop on the following morning nothing was found wrong with it. As to the second element, the proof by appellee himself is that he had, for some time, been regularly using this wrench and others similar to it, knew how to use it, knew how it worked; and that nothing had been detected as being defective about it, until the very moment of the accident, and then only by the fact of the accident itself; and, as we have already mentioned, when it was brought by appellee to appellant's mechanics on the following morning, they found nothing about it out of order. And as to the third element, in addition to what has been said of the proof, as to the other elements, the undisputed testimony of appellee's expert witness, upon cross-examination, was that when a wrench of this kind is put in perfect order by a competent person, it might, in a little while, get out of order and become imperfect. He says that a wrench of this kind "may be good when he puts it on there and bad when he winds up;" and he explains that the man handling the wrench is able to tell when the wrench has become bad, his language being that a man using a wrench of this kind "can tell in a second if it is working or not."

The result of all this is that the case must fail on the third essential element, even if not on the first and second, for the testimony fails to show either directly or by a substantially warrantable inference growing out of the intrinsic nature of the circumstances, that the defect, if it existed at all, had existed for a sufficient antecedent period as to have furnished a reasonable opportunity to the master for inspection and examination, whereby the defect could have been discovered. The master is not required to make an examination of a tool before each and every operation thereof. The rule in that respect, as in all others, is one of reason; and if an inspection and examination were required before each and every separate operation of a particular tool, it would necessitate the constant attendance of two men, one to operate the tool and the other to constantly examine it. Such would be an unreasonable requirement, and is not the law. 39 C. J. 420.

The peremptory instruction requested by appellant should have been given.

Reversed and judgment here for appellant.