FORBUS *et al. v.* COBB BROS. CONST. CO. *et al.*

(Division B. Jan. 2, 1939.)

[185 So. 243. No. 33429.]

(Division B.  Feb. 27, 1939.)

[186 So. 643.  No. 33429.]

**Jas. A. Cunningham** and **Floyd W. Cunningham**, both of Booneville, for appellants.

650

**Fred B. Smith**, of Ripley, for appellees.

Jas. A. Cunningham and Floyd W. Cunningham, both of Booneville, for appellants, on suggestion of error.

Argued orally by **Jas. A. Cunningham**, for appellant, and by **Fred B. Smith**, for appellee.

**Ethridge, P. J.**, delivered the opinion of the Court.

The appellants, being the father, mother and brothers of Audie B. Forbus, deceased, who met his death by being crushed by one of the trucks operated by Cobb Brothers Construction Company, allege that on or about the 4th day of July, 1937, he was engaged as an employee of the defendant company, to do certain work for them; and that his death was caused by the negligence of the company. Audie E. Forbus was employed for the purpose of guarding certain road machinery used in the construction of road work, but which on Sundays and holidays was collected at points along the construction project, and placed under a guard or watchman, to prevent the machinery being tampered with. When the machinery was brought in on Saturday evening night mechanics went over it, making any necessary repairs to put it in readiness to resume work on Monday; and this was also true of holidays, the machines being brought in and put in order for operation on the day following the holiday.

The deceased, Forbus, through his father, had applied to the construction company for work, and was finally given the position mentioned, with instructions not to permit any person to go about the trucks and machinery, and not to do so himself. On the morning of the day that he was killed, one of the defendant company's foremen came to the deceased, where the trucks were assembled, and had the oil and gasoline in his car checked. It was a cloudy day, with threatened rain, and he instructed young Forbus, in case it should rain, to go to a nearby house, or into the cab of a dragline, which would afford shelter and protection from the rain. About the middle of that day a severe rain came up, with some wind, lasting for about an hour. After the rain was over the deceased was found under one of the truck bodies, the particular truck being equipped with a lever and machinery operated by hydraulics by which the body of the truck could be raised or lowered; this in order that when the truck was loaded with dirt, or other material, to be carried to the point where it was needed, the body of the truck could be lowered to deposit the load. There was a brake both above and below the body of the truck, by means of which it could be released, and when so released the body would descend. This truck had been backed up against an embankment, and it was so situated that if a person went under it the rain, coming from the direction it did, could not reach him. Young Forbus was found under this truck, with his body crushed.

The suit against the construction company was brought largely upon the theory that Audie Forbus had not received proper instructions as to the dangers inherent in his employment, especially in regard to the operation of the levers in this type of truck, used to raise and lower the body, as above stated. The proof as to this alleged negligence is that after the boy was carried to his home, a foreman of the company, who had employed the boy, came to the home, and while there the boy's mother asked

him why he did not give her son instructions as to the danger of the truck and of his employment; to which he was alleged to have replied that he did not know why he failed to do so—that he should have done this. The foreman denied this conversation, but other witnesses than the mother, who were offered, would have supported her on that proposition; this evidence, however, was excluded upon objection by the defendant.

It is not disputed in this record that the young man was instructed to stay away from the trucks and machinery; and that he was not to permit others to go about them; that it was his duty simply to watch and protect them from anyone who might be inclined to tamper with the trucks or machinery. It was no part of his duty to see that the machines were in order, or to make any repairs. It is not disputed that he was instructed that in case of rain he was either to go in the cab of the dragline, which would afford protection, or to a near-by residence, where he might obtain shelter. However, it was shown in the proof that this residence was not open on the day in question, that the occupants thereof were not employees of the defendant company, and that there was no arrangement, contractual or otherwise, by which young Forbus could be sheltered in case of rain. It was also shown that some of the employees of defendant who were operating the machines would sometimes get under the body of the trucks for protection from rain. But that proof, in our judgment, does not establish the right of the deceased to go under the truck for shelter, as he probably did in the present case. He was specifically instructed where to go, to a place connected with his work, easily accessible.

It is quite probable that the deceased went under the truck to get out of the rain, and that curiosity prompted him to manipulate the machinery or lever which controlled the body of the truck. But this was no part of his duty, and his act was in violation of his instructions.

An employer, even of persons under age, is not an insurer of the employee's safety; and in order to recover for an injury the injured person must have been engaged in the master's business at the time of the injury, and he must be acting within the scope of his employment. In the present instant young Forbus at the time of his death was not about the business of his master, nor was he acting within the scope of his employment. He went to a place of danger of his own accord, in violation of specific instructions; and his own act, through no fault of the master, was the cause of his death. While the master is under the duty to exercise reasonable care, and to furnish a reasonably safe place for his employees to work, it is not his duty to furnish a reasonably safe place for the gratification of curiosity, or for experimentation, in connection with dangerous agencies, not connected with the employee's work or in the line of his duty.

In the case of Gulfport Creosoting Co. v. White, 171 Miss. 127, 157 So. 86, the Court said: "It is the universal rule wherever the common law prevails that the duty of the master in regard to tools and places to work is not that of an insurer, is not an absolute duty, but is simply to exercise reasonable care to furnish the servant with reasonably safe tools and appliances, and likewise as to a safe place to work. 39 C. J., p. 313, et seq.; Mobile & O. Railroad Co. v. Clay, 156 Miss. 463, 482, 125 So. 819." Brown v. Coley, 168 Miss. 778, 152 So. 61.

We think that the proof here shows without dispute that the death of young Forbus was the result of his own negligent act, in violation of specific instructions; that he was not engaged about the master's business, nor within the scope of his employment; and consequently that the master was not liable for his unfortunate death. The court below was correct in granting a directed verdict.

Affirmed.

**McGehee, J.**, delivered the opinion of the Court on suggestion of error.

Assuming for the purpose of this decision that the excluded testimony mentioned in the former opinion in this case was both competent and true, it would only serve to raise an issue as to whether the foreman in charge had specifically explained to young Forbus the danger of operating, while underneath the truck, the device for raising or lowering the truck body. Such testimony would not have controverted the statement of the foreman that the young man had no duties to perform underneath the truck and had been instructed to keep away from it, nor does it contradict his statement that Forbus in case of rain should go into the cab of the dragline or to a nearby house for shelter. Since the servant had no duties to perform underneath the body of the truck and was not required to go under it, and had been instructed in effect not to do so, the question of the failure of the master to exercise reasonable care to furnish the servant a reasonably safe place in which to work is not here involved. Moreover, on the whole record, the unfortunate accident was one such as could not have been reasonably anticipated as a natural and probable consequence of anything done or omitted to be done by the master in the exercise of ordinary care. Of course, it now appears after the happening of the accident that if the foreman had taken the care and precaution to have explained to the boy in detail the operation of the device by which the truck body could be raised or lowered, even though he had no duties to perform in connection therewith, nor was required to go near the same, his death may not have occurred. However, after due consideration of the suggestion of error, we are of the opinion that the omitted caution does not establish negligence on the part of the master in view of

the fact that the servant had no duties to perform in connection with the device in question and had been instructed in effect not to go under the truck at all.

Suggestion of error overruled.