MISSISSIPPI COTTON OIL CO. *v.* C. T. ELLIS.

1. MASTER AND SERVANT. *Position of peril.　Warning.　Negligence.*

   In an action against an oil company by an employe, injured while painting its cars within an inclosed shed, by the backing of a train therein, the guard stationed at the entrance having testified that he gave warning of its approach, but plaintiff and others with him having testified that they did not hear it, it was proper to instruct that the warning must have been such as one of ordinary hearing, at the distance where the plaintiff was, could have heard it.

2. SAME. *Perilous position of servant.　Duty of master.*

   Where an oil company has a switch extending into its inclosed sheds, and keeps a guard at the entrance to signal in engines, one sent by

it to paint detached tank cars within the shed may, while on them and in a position of peril, rely on the legal duty of the company to give him sufficient notice of danger from incoming cars, regardless of any custom of the company as to this. *Railroad Co.* v. *Bailey*, 40 Miss., 395.

FROM the circuit court of Lauderdale county.

HON. S. H. TERRAL, Judge.

Action by C. T. Ellis against the Mississippi Cotton Oil Company to recover for personal injuries. The appellant company owns and operates a large cotton oil mill in the city of Meridian, situated near the track of the Mobile & Ohio Railroad, a spur switch of which runs into a large inclosed shed connected with the mill. This shed is 512 feet long, and the switch track enters at one end through a gate, at or near which the oil company kept a guard stationed to signal in engines and give warning of their approach. The track within the shed was used exclusively by the oil company for loading and unloading cars; and in putting in and taking out cars, the employes of the railroad company acted exclusively under the direction of the oil company and in obedience to signals given by the guard stationed at the entrance.

The oil company owned a number of tank cars, and contracted with one Gaston to paint and stencil them. The cars, at the time, were stationed outside the shed, on a switch of the railroad known as the " hospital switch," but before the work was finished five or six of them were moved underneath the shed, and were placed near the end farthest from the entrance. There is conflict in the evidence as to why the cars were placed within the shed. The testimony of the plaintiff was to the effect that they were so placed by the direction of the manager of the oil company to protect the cars from the heat of the sun, as he was afraid the paint would blister. Ellis, the plaintiff, a workman in the employ of Gaston, was sent by the latter to finish painting and stenciling the cars, and, on reaching the entrance of the shed, he met one Wall, an employe of de-

fendant, who was stationed there to signal in engines, and told him that he was going back to paint the letters on the cars. He was accompanied by Ernest Gaston, a son of his employer, and by one Kelly, both of whom assisted in the work. Between the tank cars and the entrance of the shed there were two box cars, which were being loaded with cotton seed meal. The tank cars were distant some thirty feet from the nearest one of these. Plaintiff was occupied in stenciling the end of an oil tank on one of the cars, and, in doing so, was obliged to kneel on the floor of the flat car on which the tank was. His feet rested on the bumper, and Ernest Gaston was standing near him holding the stencils. Plaintiff had his back towards the entrance, and there were several of the tank cars between him and the entrance, and on the one next to him, and within a few feet of him, Kelly was engaged in painting. While thus employed, a train of seven or eight box cars was backed into the shed against the two box cars that were being loaded, and which were not coupled to each other, and against the tank cars, which were suddenly jolted, and the foot of plaintiff was caught between the bumpers and crushed. Plaintiff became permanently disabled from performing the work of a painter, and, for the injuries thus sustained, brought this action to recover damages.

There was testimony that plaintiff and Ernest Gaston, at the time of the accident, were laughing and talking, but plaintiff testified that they were not boisterous enough to prevent their hearing an ordinary danger signal. The main controversy in the court below was over the question whether a sufficient warning of the approach of the train was given. Wall testified that, after signaling the engineer to back the cars into the shed, he cried "Lookout!" and that, as the cars were being pushed in, he walked down the track within the shed a distance of one hundred feet, or more, and again shouted "lookout" sufficiently loud to have been heard anywhere within the shed. A number of employes engaged at work in different portions of

the shed testified that they heard the cry, but none of these were near the point where plaintiff was working or as far as he from Wall. The car upon which plaintiff was, at the time of the accident, was shown to be about 300 feet from the entrance. Ernest Gaston testified that he did not hear any signal, and that none was given. Plaintiff testified that he heard none, and neither plaintiff, Gaston nor Kelly leaped from the car to avoid injury, or did anything else to indicate that they heard the signal. There was testimony that the bell of the engine was being rung, and also that the cars themselves made considerable noise. The locomotive did not get within the entrance and, in fact, was never permitted there. The injury occurred in the month of July, at a time when the oil mill was not being operated, and the tank cars were within the shed solely for the purpose of being painted, and not for transportation.

The court overruled defendant's motion to exclude the testimony of the plaintiff, and, among other charges granted for the plaintiff, were the following:

"4. If the jury believe from the evidence that, when plaintiff approached defendant's shed, he found Mr. Wall in charge of the same, and that he found no engine attached to said cars then standing in shedroom; and, if they believe that defendant kept an employe stationed at said gate to signal in engines, and that the plaintiff entered said shedroom to paint or stencil said tank cars, then the plaintiff had the right to presume that the defendant would give him notice of any approaching danger not apparent to plaintiff, and conduct himself accordingly."

"5. If the defendant undertook, through its employes, to give any warning of the approach of the engine and cars into the shedroom, it was its duty to give such warning as might have been heard by a person of ordinary hearing, considering the distance between the person giving the warning and the plaintiff at the time; and, although the jury may believe that the defendant, upon the approach of the engine, gave warning thereof, yet, if they believe it was not such warning as could

have been heard by a person of ordinary hearing at the distance where plaintiff was working, then such warning does not avail defendant anything in this suit."

There was a judgment for plaintiff for $2,500. Motion for new trial overruled, and defendant appeals.

*Miller, Smith & Hirsh,* for appellant.

1. The court should have granted the motion to exclude the testimony. It is not disputed that the backing train made a great deal of noise. One or more couplings were made after the cars got within the shed and before they collided with the tank cars. The second coupling, and the noise incident thereto, took place underneath the shed. It is a matter of common observation that noise thus confined is more distinct than when in the open air. Plaintiff was a man of average hearing, and it is certain, under the evidence, that, if he had paid the slightest attention, he would have heard the noise, and especially the warning. He admits that he was talking and laughing at the time. He had not been at work there before, and had no reason to believe that the cars were permanently there, or would be there long enough for him to complete his job. He assumed a position of great peril, and was hurt while not paying the slightest attention. The machinery in the mill was not working, and everything was still. There is no conceivable theory that can excuse plaintiff from the charge of gross negligence. Beach on Con. Neg., § 182; *Railroad Co.* v. *Stroud,* 64 Miss., 784; *Railroad Co.* v. *Houston,* 95 U. S., 697. For the same reason, the peremptory instruction for defendant should have been given. It will not excuse plaintiff to say that he did not hear a warning which was undoubtedly given, and which others heard and acted upon.

2. It was error to grant plaintiff's fifth instruction. It is a plain intimation on the weight of evidence, and there is no foundation of fact for the instruction. The testimony framed one issue only, so far as the warning is concerned, and that

was whether the warning was given.    There was no suggestion
that a warning was given that was such as could not have been
heard by a person of ordinary hearing at the distance where
plaintiff was working.    There was nothing to base the instruc-
tion upon, except the bare fact that plaintiff did not hear the
warning.

3. The fourth instruction for plaintiff is also erroneous.    It
assumes that plaintiff had a right to be influenced by a fact of
which he had no knowledge.    There is no evidence that plain-
tiff knew that the company kept a guard stationed at the gate
to signal in engines.    He had no right to presume anything
based upon something of which he knew nothing, or a custom
of which he had no knowledge.    "The thought of holding a
private individual responsible in damages in such a case would
not arise in any mind.    The just right of corporations, under
the law, must be as zealously guarded and protected by the
courts as those of natural persons."    *Oil Works* v. *Black*, 70
Miss., 8.

*Miller & Baskin*, for appellee.

This court will not disturb the finding of the jury on ques-
tions of fact involved.    Appellee was in the shed at the in-
stance of appellant, and, with its full consent and knowledge,
working on cars placed there for the purpose.    The negligence
of appellant is clearly established, and the verdict is conclusive
as to this.    The only attempt to evade the consequence of this
negligence is by an effort to show that appellee had been warned
of the approaching cars.    The defendant recognizes its duty to
give the warning, and the contention is that the warning given
was sufficient.    Even the testimony for defendant was that the
warning could be heard "if a man was not too far back in the
shed."    The witnesses do not agree exactly as to what the
warning was, and there is testimony to warrant the conclusion
that, even if appellee had heard the warning, it was too late
to escape the danger.    If there is any evidence in behalf of

appellee upon which a verdict may be supported, the judgment must be affirmed. *Solomon* v. *Compress Co.*, 69 Miss., 319.

The charges were more favorable to defendant than it was entitled to. It devolved on the defendant company to see that plaintiff had actual notice that the cars would be backed into the shed. Even if appellant had heard the rumbling of the cars or the shout, he had the right to presume that the cars would not be backed down upon him, and that the signals were intended for others. The duty which defendant owed to plaintiff was the ordinary care which every man owes to his neighbor, to do him no injury by negligence while both are engaged in lawful pursuits. *Railroad Co.* v. *Thompson*, 64 Miss., 585; *Railroad Co.* v. *Turner*, 71 *Ib.*, 402; *Railroad Co.* v. *Summers*, 68 *Ib.*, 566; 88 Am. Dec., 332; 142 Mass., 323; 22 Wis., 653; 44 *Ib.*, 391. Bishop on Non-Contract Law, 489; Buswell on Personal Injuries, 220; 62 Mo., 232.

*Brame & Alexander*, on the same side.

The rule of care applicable in this case is set out in *Railroad Co.* v. *Bailey*, 40 Miss., 395. The usual warning, though probably sufficient as to those engaged in operating the trains, was not enough for appellee. It was for the jury to say whether the nature of the case, the locality and the peculiar circumstances surrounding plaintiff, required more than the usual perfunctory warning, "Lookout!" which might have applied equally as well to others in the building, and, if heard, would not have given notice of the real danger. The tank cars were not in the shed for transportation, but for repair, and were thirty feet or more from the box cars. Why, in coming in for the loaded box cars, it was necessary to back against the tank cars is unexplained and inexplicable.

A person invited on the premises of another in the performance of a contract, and for their mutual advantage, is entitled to receive from the inviter a higher degree of care than if he were a mere licensee. Whittaker's Smith on Neg., 224; Pat-

tison on Ry. Acc. L., § 189; 8 Am. & Eng. R. R. Cas., 480; *Railroad Co.* v. *Bailey, supra;* 47 Mo., 521. The plaintiff was not required to divide his attention between his work and watching for trains. The gate and guard were there for his protection. The guard knew he was stenciling, and that his work brought him into a position of peril.

The instructions complained of were proper. A warning that cannot be heard is no warning. If the noise of the train or the bell be deemed sufficient, then in no case is there need for other warning. It is significant that neither plaintiff, Gaston, nor Kelly acted as though he heard any warning. It is inconceivable that three men, all in a position of peril, would have acted in gross disregard of danger to life and limb. The testimony that the warning was not given is not negative evidence. There is no way of determining whether a cry is loud enough to have been heard a certain distance except by the evidence that persons at that distance, and in a position to hear, did not hear it. The voice is gone, and cannot be reproduced. The man who spoke may think he could have been heard, but that is a mere opinion. If the signal were from a whistle or bell that emits uniform sounds, the contention would be plausible; but the human voice ranges between a whisper and a shout, and no man can, without experience of the voice at the time, swear positively how far a shout could have been heard. Even if the instruction is subject to criticism, it is cured by the others. The defendant obtained fourteen instructions, announcing the law most liberally in its favor.

Argued orally by *Murray F. Smith,* for appellant, and *W. E. Baskin* and *C. H. Alexander,* for appellee.

WHITFIELD, J., delivered the opinion of the court.

We do not think there was any error in granting plaintiff's fifth instruction. Ernest Gaston testified positively that there was no warning; Kelly and appellee that they heard none. The best possible evidence as to whether a warning, given by the

human voice, was heard at a particular place, is the testimony of persons of average hearing stationed, at the time of the warning, at that place. Some employes, not at the precise place, say they heard it. These three persons, at the very place, say they did not, and one that there was no warning. Appellee says they were talking to each other, but not so loud as not to hear any unusual sound, and they were all in two or three feet of each other. It is a most pregnant fact that none of the three did anything to indicate they had heard—made no effort to escape. Wall's statement is largely, of necessity, his opinion that his voice, as pitched on this occasion, could, under the circumstances, have been heard at that distance, and at that place. The instruction seems to us, in the light of the testimony, correct.

The fourth instruction is said to have been not properly given for plaintiff. Whether he knew of the custom or not, he had a right to rely on the duty of the appellant, under the circumstances shown in this record, to notify him. He saw the guard. He took the place of work assigned him, with the legal duties arising out of the character of such place; *res ipsa loquitur*—the environment spoke the duty of the appellant to give notice to him of impending peril. He had been working on the "hospital switch." Appellant, the verdict finds, moved him in under the shed. These oil cars were not for transportation. There was a space of thirty feet between the end of the box cars and the first oil car. Appellee's back, stenciling as he was, was necessarily towards the entrance. If the custom was unknown to him, he knew the duty which the situation thus made imposed on appellant, and his rights depend on that duty, and not on a custom, known or unknown, framed in obedience to that duty. If the charge be criticisable as not referring rather to the duty than the custom, it would still not be reversible error, in view of all the instructions and the testimony. See *Railroad Co.* v. *Bailey*, 40 Miss., 395; 8 Am. & Eng. R. R. Cases, 480.

The appellant was granted further instructions, drawn with consummate skill, and presenting to the jury the law applicable, under its theory of the case, freely—perhaps too liberally for appellant.

We find no error, and the judgment is

*Affirmed.*