ILLINOIS CENTRAL RAILROAD CO. *v.* JULIA BISHOP ET AL.

RAILROADS. *Fellow-servants. Laws of Louisiana. Section hand. Draw-bridge tender.*

    A section hand and another employe in charge of a drawbridge on such section are, under the laws of Louisiana, fellow-servants of the railroad company, and the company is not liable for the former's death, caused by the latter's negligence in the management of the bridge.

FROM the circuit court, first district, of Hinds county.

    HON. ROBERT POWELL, Judge.

    Julia Bishop and others, appellees, were the plaintiffs in the court below; the railroad company, appellant, was defendant there. The plaintiffs were the mother and next of kin of Oscar Bishop, deceased, and the suit was to recover damages for his death, which occurred in Louisiana while the deceased was there in the service of the railroad company as a section hand. The portion of the railroad on which deceased was employed was divided by Pass Manchac, a narrow strip of water connecting two lakes, which the railroad crossed on a drawbridge; this drawbridge was operated by an employe of the railroad company, called the "bridge tender." Deceased, over his protest, was required by the section foreman to sit on a plank, placed on the handcar to be used for a seat, and hold a keg while the car was being run. In crossing the bridge over the pass the plank on which deceased was seated struck the lever used to operate the draw, which had been left in an upright position, and deceased was knocked from the car into the water and drowned. There was a judgment against the railroad company, from which it appealed.

    *Mayes & Harris*, for appellant.

    The injury having occurred in Louisiana, the law governing the case is the Louisiana law—the law of the place of the injury.

It is alleged in the declaration that the use of the plank on the handcar was of itself negligence on the part of the company. Even admitting that the plank was not so safe as sitting on the handcar itself, yet it is proved incontrovertibly that the use of the plank was usual and ordinary in the company's business, and universal, and this was a risk assumed by the deceased. The common law doctrine as to the assumption of risks is fully recognized in Louisiana. *McCarthy* v. *Iron Works*, 48 La. Ann., 978; *Bland* v. *Railway*, 48 La. Ann., 1057, s.c. 47 La. Ann., 870; 2 Thompson on Negligence, 1008; *Hatter* v. *Railroad Co.*, 69 Miss., 642.

In the court below, the learned judge stated as his reason for denying the peremptory instruction asked for by defendant, that, in his opinion, the bridge tender was the vice principal, and not the fellow-servant, of the section crew. This, we think, under the rule adopted in Louisiana, was manifestly erroneous. The State of Louisiana has adopted the common law fellow-servant doctrine, as modified by the supreme court of the United States in the case of *Railroad Co.* v. *Ross*, 112 U. S., 377. *Slatterly* v. *Morgan*, 35 La. Ann., 1166; *Townes* v. *Railroad Co.*, 37 La. Ann., 630; *Van Amberg* v. *Railroad Co.*, 37 La. Ann., 650; *Faren* v. *Sellers & Co.*, 39 La. Ann., 1011; *Mattise* v. *Ice Co.*, 46 La. Ann., 1536.

Strader, the bridge tender, was really a mere switchman, opening and closing the draw, just as the switchman opens and closes the switch for the passage of trains, and it is almost universally held that a switchman is a fellow-servant of trainmen. On this subject, see *Railroad Co.* v. *Bush*, 15 Lea (Tenn.), 145; *Farwell* v. *Railroad Co.*, 38 Am. Dec., 339; *Slatterly* v. *Morgan*, 35 La. Ann., 1166; *Naylor* v. *Rice*, 33 Fed. Rep., 801; 20 Ore., 285; 2 Bailey on Personal Injuries, sec. 2325.

*Williamson & Potter*, for appellees.

Appellees contend that the company is liable on three distinct grounds: (1) That the superintendent of the bridge was

the agent and representative of the company in the management of the bridge, and not a fellow-servant with the section hand, Bishop; (2) that the section foreman, while acting in his capacity of looking out for the safety of the crew, was not a fellow-servant, and his failure to look out and see the damage was the negligence of the master; (3) that it is the duty of the master to provide a safe and proper place for its employes to work, and that the plank used did not furnish such a place, but was unsafe, and, in part, led up to the injury for which the company is liable. *Towns* v. *Railway Co.*, 37 La. Ann., 630; *Van Amberg* v. *Railway Co.*, 37 La. Ann., 651; *Tutrix* v. *Sellers & Co.*, 39 La. Ann., 1014; *Mattise* v. *Ice Co.*, 46 La. Ann., 1536.

From the above cited cases the court will see that the Louisiana court has adopted and continuously held to the vice principal doctrine in all cases that have any analogy to the case at bar. Here there was no kind of association or joint employment. The section hand's duty looked alone to the master's business. In the strictest sense he was subject to the command of the master's agent or superior officer over him; his employment looked alone to necessary repair of the road. These were the duties that created his place and gave him employment.

The bridge foreman was not alone under duty to the railroad company, but he stood in the place of the company in its obligation under the law to obey every call that was made by passing vessels to have the bridge open for their passage. And he was also the representative of the company in its obligation to its employes to have the bridge in proper and safe condition for them to pass over. He not only had absolute charge over the bridge, but had full authority and control over the crew under him. His duties were not only of the highest importance to the public, but the life of the traveler as well as the employe was intrusted to his keeping. 3 Elliott on Railroads, sec. 1317; Wood on Master and Servant, 860; *Railway Co.* v. *Rice*, 144 Ill., 227; *Cooper* v. *Mullins*, 30 Ga., 146; *Rolling*

*Mill Co.* v. *Johnson,* 114 Ill., 57; *Hullhan* v. *Railway Co.,* 68 Wis., 520; *Dwyer* v. *Express Co.,* 82 Wis., 307; *Lewis* v. *Railway Co.,* 59 Mo., 495; *Hall* v. *Railway Co.,* 74 Mo., 298; *Railway Co.* v. *Smith,* 59 Ala., 245; *Lewis* v. *Seifert,* 116 Pa. St., 628; *Lasky* v. *Railway Co.,* 83 Mo., 461; *Smith* v. *Railway Co.,* 92 Mo., 359; *Darregan* v. *Railway Co.,* 52 Conn., 285; *Pike* v. *Railway Co.,* 41 Fed. Rep., 95; *Muhlman* v. *Railway Co.,* 2 L. R. A., 192; *Anderson* v. *Bennett,* 38 Am. & Eng. Ry. Cases, 102; *Justice* v. *Railway Co.,* 136 Ind., 321; *McDermott* v. *Railway Co.,* 87 Mo., 285; *Banks* v. *Railway Co.,* 40 Mo. App., 458; *Sweeny* v. *Gulf Co.,* 84 Tex., 433; *Grand Trunk Railway Co.* v. *Cummings,* 106 U. S., 700; *Ellis* v. *Railway Co.,* 95 N. Y., 546.

Argued orally by *J. B. Harris,* for appellant, and by *W. H. Potter* and *C. M. Williamson,* for appellees.

WOODS, C. J., delivered the opinion of the court.

The use of the plank on the hand-car is shown by all the evidence to have been employed by appellant and its employes continuously for at least fifteen years prior to the accident which resulted in the death of appellee's son. Its use was not only customary, but is shown, also, to have not been a dangerous appliance.

The brother of the deceased, who was introduced as a witness for appellee, testified that the use of the plank was as safe as walking in a road. The use of the plank was not the cause of the injury complained of. The accident was caused directly by the improper position of the lever used in closing and fastening the draw-bridge.

The bridge-tender was not the superior of the section crew— the *alter ego* of the railroad company. He was simply a fellow-servant of the deceased, and engaged in the same employment. He had charge of a small portion of the track in the section upon which the crew to which the deceased belonged worked. The

small part of the track in this section which he had charge of was that part of the line where the rails of the track rested upon the superstructure which spanned Manchac pass, which connected Maurepass and Ponchartrain lakes. So far as his duties to the section crew were concerned, he had only to keep the draw closed and signal the crew to go forward. But his duty to give signals did not make him a superior officer of the section crew. He was no more a superior officer than any ordinary switchman, whose duty it is to open and close switches, is superior to conductors and engineers, whom he signals to go forward with their trains. If the lever to the draw-bridge was left in an improper position by him, it was the negligence of a fellow-servant simply. In what manner, or by what means, or by whose agency, the lever was left in an upright position on the occasion in question no where appears. But, we repeat, if it was improperly left upright by the bridge-tender, it was the negligence of a fellow-servant merely, for which the railroad company was not liable.

We need not determine whether the section foreman is a vice principal within the principles of any decision to be found in the Louisiana reports. The courts of that state have never held a section foreman to be a vice principal, but if they had so held, or if such character might be fairly imputed to him by reason of his being within the principles of any adjudication of the supreme court, still the plaintiff should not have recovered, because no negligence of the foreman was shown by the evidence.

We have already said that the use of the plank by him for seating a part of his crew was not negligence. The requiring the deceased to hold the keg, though improper, perhaps, was harmless, for the holding the keg in no way contributed to the injury. That was occasioned by negligence of the bridge-tender in leaving the lever upright, if we assume that he did negligently so leave it. A very careful examination of the Louisiana cases leads us to our conclusion.

*Reversed and remanded.*