YAZOO & M. V. R. Co. *v.* SMITH.*

(Division A.   May 28, 1928.)

[117 So. 339.   No. 26976.]

*Corpus Juris-Cyc. References: Master and Servant, 39CJ, p. 489, n. 4; p. 491, n. 24; p. 1049, n. 15; As to duty of master to instruct and warn the servant as to the perils of the employment, see annotation in 44 L. R. A. 48; 18 R. C. L. 570; 3 R. C. L. Supp. 825; 4 R. C. L. Supp. 1196; 5 R. C. L. Supp. 992; 6 R. C. L. Supp. 1076.

*H. D. Minor, Chas. N. Burch* and *C. H. McKay,* for appellant.

888

*W. H. Watkins* and *James McClure,* for appellee.

894

Argued orally by *H. D. Minor,* for appellant, and *W. H. Watkins* and *James McClure,* for appellee.

McGowen, J. The appellant, the Yazoo & Mississippi Valley Railroad Company, prosecutes this appeal from a judgment of the circuit court of Panola county against it in favor of William B. Smith, the appellee, for twelve thousand five hundred dollars for personal injuries.

The declaration alleges that the appellee was employed by the railroad company in 1927, in the work of converting three old box cars into a storeroom and office at Cleveland, Miss.; that he was working as a carpenter under one Williford, appellant's foreman; that, while appellee was on a scaffold on the outside of one of the cars taking off some angle irons with a cold chisel, he was directly in front of a tie-rod which ran completely through the car; that without any warning to him the foreman struck this iron tie-rod a heavy blow, causing the end to strike appellee in the groin, inflicting serious and painful injuries; that the railroad company, in failing to provide for him a reasonably safe place to work, in consequence of which he was injured, was negligent, and that he was not given any warning, nor had there been promulgated any set of rules which would have protected him from such injuries, and, as a proximate consequence of the failure to warn him, he was injured.

The appellant railroad company filed six pleas to the following effect: (1) The plea of general issue; (2) that the injury was caused by the negligence of a fellow servant; (3) that the negligence was that of the plaintiff and a fellow servant; (4) that the risk was open and understood by appellee and voluntarily assumed by him; (5) that the plaintiff (appellee) was guilty of negligence in the premises which contributed to or caused the injuries; and (6) that the dangers were not such as the railroad company could have guarded against nor foreseen, but were due to a transitory peril.

The plaintiff (appellee), as his own witness, testified that he was injured in January, 1927, while working as a carpenter, for the appellant, at Cleveland, Miss.; that

S. R. Williford was foreman of a repair gang; that at the time of the injury Smith and the gang were engaged in converting three old box cars, which were on pillars, into an office; that at the time he was injured he was sitting on a scaffold facing the outside of one of these cars in close proximity thereto; that the scaffold was elevated some distance from the ground, and he was engaged in taking off angle irons; that there were seven men at work there, most of whom were on the inside of the car and could not be seen by him, he being on the outside of the car engaged in work there. It further appears that at or near the end of the car there was what is called a tie-rod, being a rod more than six feet long and one inch in diameter, made of iron, which ran through the car and held it together, and was held in place by nuts; that, in order to do the work, it was necessary that this tie-rod be driven out so the car could be ceiled on the inside; that Williford gave him the order to occupy that place, and that, after he had been given this order, he did not know the position of Williford, or the other men engaged at work on the inside of the car. To use the appellee's own language, this occurred:

"A. While I was sitting there they got a rod and drove it in me, and knocked it out on the scaffold. I fell out here on the upright pieces. They held me; I didn't fall off.

"Q. This tie-rod was driven into you? A. Yes, sir.

"Q. How was it driven into you—at what part of the body? A. In my left groin, . . . hard blow; . . . it knocked me out. I couldn't tell you how the pain was. They carried me to the car and undressed me and put me to bed."

He was then asked if he had been given any notice that this rod was about to be driven into his body, and his answer was, "No, sir," that he did not know, and that no warning or notice of intention to drive the rod was afforded him. He further said that Williford, the foreman,

told him he was the one, and that he (Williford) did not know Smith was out there, or did not think about it. Appellee's evidence further disclosed that the people on the inside were engaged in driving nails into the side of the car, and that these nails protruded. He further testified that the company had no sort of rule with reference to driving nails or bolts out of cars, and that there should have been a rule, and that there was an entire absence of any system of warning, and that he had no warning by rule, or in any other manner; that, if he had been warned, he could have watched out for the danger.

The proof further showed, according to appellee and his physicians, that he had been in the care of physicians since the date of his injury; that he suffered great pain, and that he could not prosecute his business; that before this injury he was an able-bodied man, doing as much work as any carpenter on his gang, and that at the time of the trial he could not engage in any work; that he had incurred doctor and medical bills; and that he was permanently injured, and had received such injuries at a time when he was doing work that Williford, the foreman, had directed him to do, and at a time when he did not know the tie-rod was to be driven out, nor had anything been said to him about it.

As there is no brief on the excessive amount of verdict and judgment, we will not detail further the injuries sustained by the appellee.

The plaintiff (appellee) and his witnesses, made a case of an injury of a serious nature, and the jury evidently took plaintiff's view of the facts.

The defendant Williford claimed that he gave a warning, and that Smith knew that he was going to drive the rod out. Other witnesses for the railroad company tended to contradict plaintiff on matters of position, but, on the question of whether or not there was any warning, there was a straight issue of fact between plaintiff's evidence, and that of Williford. Williford admitted that he struck

the iron rod with a sledge-hammer, and that the appellee was injured because thereof.

Appellant contended in the court below, and contends here, that it was entitled to a peremptory instruction; its main contention being that the proximate cause of the injury to Smith, its employee, was the negligence of his fellow servant Williford, and not the unsafety of the premises nor the condition of the work, and that the principle of the master's duty to furnish a safe place to work has no application, that Williford and Smith were fellow servants engaged in common work together, and that Williford was not a vice principal, and that the obligation of a master to furnish a safe place to work does not impose upon him the duty of keeping a building his servants are erecting safe during every moment they are working upon same, as their safety depends upon due performance of the work by them, and that the danger incident to this employment was assumed by Smith, the appellee.

The one instruction complained of, given by the court below, for the appellee, is as follows:

"The court instructs the jury, for the plaintiff, that in this case the defendant was the master of W. B. Smith, plaintiff, and plaintiff was the servant of said defendant, and that, as such master, it was incumbent on defendant to use due care to furnish said W. B. Smith with a reasonably safe place in which to work, and if the jury believe, from the evidence, that the defendant failed to use due care to furnish said Smith with a reasonably safe place in which to work, and that no reasonably safe place was furnished, and further believe from the evidence that such failure, if failure there was, to use due care to furnish him with a reasonably safe place in which to work was negligence on the part of the defendant, and proximately contributed to plaintiff's injury, and if he was injured, then you shall find a verdict for the plaintiff."

More than a dozen instructions were granted the defendant. The court instructed the jury that Williford and Smith were fellow servants, and that, if the injury was proximately caused by a fellow servant, that there could be no recovery. The jury was also instructed, on behalf of the defendant, the railroad company, that the master, in providing a safe place in which to work, did not have to provide for transitory perils and acts of carelessness, or negligence of a fellow servant, which could neither be foreseen nor safeguarded against by the master.

There are some minor matters with reference to objections to evidence, but we do not think they are of sufficient import to require us to burden this opinion with them, as we think they are without merit.

As we view this case, it is narrowed down to one proposition, viz.: Was the appellee, Smith, injured as a result of the failure of the master, the railroad company, to furnish him with a reasonably safe place in which to work? If this question is answered in the affirmative, then the verdict and judgment of the court below must be upheld. If it be answered in the negative, then the judgment of the court below must be reversed, and judgment entered here for the appellant, the railroad company.

After a very careful study of this record, we have reached the conclusion that the jury was warranted, by the evidence, in finding that the appellee, Smith, was injured, and that his injuries were due to the failure of the master, the railroad company, to furnish him a reasonably safe place in which to work at the time he was injured, and that the failure to furnish said safe place was the proximate cause of his injuries.

Counsel for both sides have very diligently collaborated authorities from various courts throughout this country on this question, and their "name is legion;" but it is a fruitless excursion into a maze of authorities in hopeless conflict outside this jurisdiction, when the question has

been settled and set at rest by our own court, and for more than a half a century this court has followed on this question a consistent course.

We shall, however, because of the insistence of counsel, briefly refer to the cases cited by the appellant to sustain its contention.

Appellant cites and relies upon the case of *I. C. R. R. Co.* v. *Bishop,* 76 Miss. 758, 25 So. 867. That was a case decided upon a principle of law obtaining in Louisiana, and it was held that the negligence was due to a fellow servant's failure to discharge his duty, he being a bridge tender and having left the lever upright, and in applying the Louisiana law, there was hardly any room for the contention that the rule with reference to furnishing him a safe place to work could have any effect.

In the case of *New Orleans & N. E. R. Co.* v. *Williams,* 96 Miss. 374, 53 So. 619, the plaintiff, Williams, attempted to pass between cars, and the other servants of the railroad company were engaged in switching the cars on the track. This court held that, if there was any negligence, it was that of the fellow servants and was not due to lack of care and a safe place in which to work.

In the case of *Cybur Lumber Co.* v. *Erkhart,* 118 Miss. 401, 79 So. 235, this court held, where the tong man was operating a skidder, the lumber company was not liable for injuries sustained when he walked to slacken a line and was struck by a broken tree falling from its stump, and that there the injury was not due to the master's failure to furnish a safe place in which to work, as there was no specific direction for the servant to be at that place at the moment of his injury.

In the case of *International Co.* v. *Carter,* 121 Miss. 103, 83 So. 413, the court simply held that the rule which requires a master to furnish a safe place in which to work does not apply to cases where the prosecution of the work itself creates danger.

*Great Southern Lumber Co.* v. *Hamilton,* 137 Miss. 55, 101 So. 787. There the employee injured was being carried from the camp where he had been working, and was being transported on a motortruck which belonged to his employer; the truck being operated by a fellow servant whose negligence caused the injury. There was nothing wrong with the truck, it was in good repair, and there the court considered no question as to whether there was a safe place in which to work.

*Great Southern Lumber Co.* v. *May,* 138 Miss. 27, 102 So. 854, 103 So. 363, was a case where one fellow servant made an assault upon another, and the question involved in the case at bar was not there under review.

In the case of *G. M. & N. Ry. Co.* v. *Brown,* 143 Miss. 890, 108 So. 503, an employee was injured because, when he stepped on a piece of decking where it had failed to catch on the stringer, his weight forced the other end of the decking up toward an upright position, making a hole through which his foot and leg went, resulting in his injury. The court held that the employee was employed with others for the very purpose of making a place of safety, and therefore the doctrine of a reasonably safe place to work could not be invoked.

*Hercules Powder Co.* v. *Hammack,* 145 Miss. 304, 110 So. 676, simply announced that the fellow-servant rule was in force and applicable thereto. The question of a safe place in which to work was not presented nor decided.

We have called attention to the cases cited in counsel's brief from our own court in order to demonstrate that the facts and conclusions reached in each case are not applicable to the case at bar.

The appellee Smith bottomed his case on the proposition that it was the duty of the railroad company, the appellant, to furnish the appellee with a reasonably safe place in which to work, which duty could not be delegated to a fellow servant, and negligence in respect thereto

which caused the appellee's injuries was solely attributable to the appellant. It was therefore the duty of the master to warn the appellee of the danger about to be inaugurated growing out of the progress of the work, known to the master, and unknown to the appellee, and such duty cannot be delegated to a fellow servant so as to relieve the master from the results of his noncompliance.

Smith, the appellee, testified, and the jury adopted his version, that he was directed by the foreman, Williford, to work at a point where he could not see Williford at work on the inside. Williford, after giving instructions to appellee to work on the outside, promptly went inside the car, and, in the progress of the master's work, and in the proper manner, so far as the work was concerned, took a sledge-hammer and knocked the tie-rod so as to drive it into the person of appellee without warning or notice.

This record does not show who was Williford's superior officer, nor whether there was any such superior officer. If we say Williford was not a vice principal, but was a fellow servant, then the master knew, or ought to have known, that, while the place was apparently safe for Smith to work in, thus removing the angle irons, sitting upon this scaffold as he was, yet when the tie-rod was struck with a sledge hammer blow that it would become perilous and dangerous to the life and limbs of any who might be working upon the scaffold at the point to which this tie-rod was driven. The mind that directed Smith to engage in the master's work at a particular place was the same mind that directed the arm that exerted the force that brought the hammer into violent contact with the tie-rod and said tie-rod in contact with the person of Smith so as to seriously injure him.

It was the duty of the master, under these circumstances, to have warned Smith of the impending danger,

that the place which seemed calm and serene was about to become a place of deadly peril.

Bear in mind that Smith could not see Williford, the car wall being between them, and that, although the accident happened in a moment, yet it cannot be said to be a transitory peril, nor can the fact, that the master protected himself by undertaking to delegate to a servant the duty which the master owed, of warning Smith that the place whereat he was engaged in work was about to become dangerous, be considered.

This view of the law is supported by the following cases.

*Oil Co.* v. *Ellis*, 72 Miss. 191, 17 So. 214. In this case, an employee was engaged in stenciling a car in a shed of the oil mill standing upon a switch, when a train was backed into the shed against two box cars, which, in turn, bumped the car on which he was working, and he was injured thereby. The court held it was the duty of the company to have given such employee notice of the danger from in-coming cars, regardless of any custom of the company in regard thereto.

In the case of *Bradford* v. *Taylor*, 85 Miss. 409, 37 So. 812, a novice employee was working in a laundry; the machinery was unsafe and defective, and she was misled into believing same to be safe. The court held that the risk so arising was not incident to her employment, and that she had the right to rely upon the representations made to her, and that the defense that it was the act of a fellow servant was not tenable.

In *A. & V. Ry. Co.* v. *Groome*, 97 Miss. 201, 52 So. 703, an employee stepped from a car onto a platform between a side track and main track of a railroad, and a plank gave way with him, and he was injured. The court said:

"The duty to furnish a safe place to work cannot ordinarily be delegated to fellow servants, and the risk relative thereto is not ordinarily assumed"—citing authorities.

To the same effect this language is approved in *Murray* v. *Natchez Drug Co.,* 100 Miss. 260, 56 So. 330.

*Edwards* v. *Hanyes-Walker Lumber Co.,* 113 Miss. 378, 74 So. 284, is directly in point. There it was the duty of an employee to oil a bit saw mandrel during the noon hour when the machinery was required to be shut down, and the foreman started the machinery before one o'clock without sounding the whistle, and the employee was injured. Held that the master was liable. It was argued that the proximate cause of the injury was the act of the fellow servant in starting the machinery, and this court said:

"It would seem absurd to say that the master might escape liability, under the facts of this case, by merely saying that he had performed his duty in this case by directing the employee to oil the mandrel while the mill was shut down at the noon hour, and while the death-dealing apparatus was quiescent; that the premature starting of the machinery was the negligent act of a fellow servant for which the master was not liable;  .  .  . That 'a master is responsible in point of law, not only for a defect on his part in providing for his failure to see that the apparatus was properly used.' Labatt's Master & Servant (2 Ed.), section 1110."

The court cited *Oil Company* v. *Ellis, supra,* and announced that the fellow-servant doctrine had no application to the facts of the case.

In the case of *Benton* v. *Finkbine Lumber Co.,* 118 Miss. 558, 79 So. 346, the court used the following language:

"The declaration states facts which show that the work in which the plaintiff was engaged was of a hazardous character, that the master could have provided warnings when the trees were about to fall, which in all probability would have protected the plaintiff from injury, and that he failed to do so. It is elementary law that it is a nondelegable duty of the master to furnish the servant with a reasonably safe place in which to

work, and that it is his further duty to maintain the place as a reasonably safe one. *Edwards* v. *Lumber Co.*, 113 Miss. 378, 74 So. 284; *Lumber Co.* v. *Cunningham*, 101 Miss. 292, 57 So. 916; *Lucey* v. *Stack-Gibbs Lbr. Co.*, 23 Idaho, 628, 131 Pac. 897, 46 L. R. A. (N. S.) 86; *Potlatch Lbr. Co.* v. *Anderson*, 199 Fed. 742, 118 C. C. A. 180.''

In the case in 46 L. R. A. (N. S.) 86, is an extensive note fully discussing this question.

In the case of *Finkbine Lumber Co.* v. *Cunningham*, 101 Miss. 292, 57 So. 916, this court said:

''It was not only the duty of the appellant to furnish the appellee with a reasonably safe place in which to work when he started at his work, but this was a continuing duty. The appellee was engaged in the manufacture of staves after the timber had been cut and handed to him. It was no part of his duty to keep the place where he was working in a reasonably safe condition, free from the accumulation of trash; but it was the ever present duty of the master to see that this was done. Appellee testifies that because the master neglected this duty, and allowed this trash to accumulate there, he was injured while attempting to reach the oil for the purpose of oiling the saws; and if this testimony is true, which the jury have said by their verdict is a fact, there is no question as to the liability of the master. . . . The instruction entirely loses sight of the fact that the duty of the master to furnish a reasonably safe place is a continuing duty.''

In the case of *Coast Ship Co.* v. *Yeager*, 120 Miss. 152, 81 So. 797, this court invoked the doctrine in a case almost parallel in its facts with the case at bar. There an employee was working inside the hull of a ship near completion, and was ignorant of the fact that boring with an auger was being done from the outside at the point at which he was working. The employee was struck by the auger being driven through the sides of the ship

by the employees on the outside, and the court held that notice should have been given by those boring on the outside to those working on the inside, and it was held that the employer there was negligent in not warning the employee of this danger, and it was further held that there was failure to provide him with a safe place in which to work, and that the employee could recover for injuries sustained on account of such failure. The court there used this significant language:

"We are not concerned with the inquiry as to what warning would have been sufficient. We have a case where no warning or system of notification whatever was given or maintained. Here the servant, we think, had a right to be informed of dangers which he himself had no means of ascertaining."

The only difference between the case at bar and the Yeager case is that there they were boring through the sides of a ship without warning to those on the inside, and here they were driving a rod in order that the work on the inside might go forward, and gave no warning to those on the outside. No rules as to warning employees had been adopted in either case according to the plaintiff's versions as adopted by the jury.

We find no reversible error in this record.

*Affirmed.*