GULF REFINING CO. *v.* FERRELL.

(Division A. April 17, 1933.)

[147 So. 476. No. 30275.]

**Dunn & Snow,** of Meridian, for appellant.

L. & N. R. R. Co. v. Daniels, 99 So. 434.

300

302

304

Gilbert & Cameron, of Meridian, for appellee.

Argued orally by **E. L. Snow**, for appellant, and **Chas. B. Cameron**, for appellee.

**McGowen, J.,** delivered the opinion of the court.

Cicero Ferrell, appellee, recovered judgment in the lower court against Gulf Refining Company, appellant, for five thousand, seven hundred fifty dollars, from which this appeal is prosecuted.

On October 10, 1931, the appellee, Ferrell, was ordered by Tatum, superintendent of the filling station operated by the Gulf Refining Company, at the intersection of two streets in the city of Meridian, to go into the street and paint a sign, "Don't Park" and certain lines in the street abutting the property of the filling station at which Ferrell was employed to do the general work of a laborer. At this intersection of streets, Twenty-ninth avenue ran approximately north and south, and Fifth street ran approximately east and west. The filling station was so arranged that its customers could drive in

from either street. An athletic field was across Twenty-Ninth avenue east from the Gulf Refining Company, and before this date people desiring to attend football games would park their cars so as to prevent ingress and egress to the filling station while the game was in progress. On this morning, Ferrell applied to the police department for permission to paint on the concrete street and avenue a ''no park'' 'sign and draw lines to prevent their place of business being blocked during the football games, and received such permission.

After getting this permission from the police department, Tatum, who directed and controlled, with the right to hire and discharge Ferrell, ordered him to get his paint, bucket,. and brush, go into the street, and paint on the concrete pavement the signs to be directed by Tatum. Ferrell complied with this order. Tatum was standing close enough to touch Ferrell, and assured him that he (Tatum) would look out for cars and warn him. This statement is denied by Tatum. In order to paint these signs, Ferrell had to kneel on the pavement two or three feet from the curb, and while so engaged, with his back to the north, and while Tatum was standing in reach of him, after he had been so engaged for about ten minutes, a truck driven by an employee of the Carl-ton-Hawkins Coal Company, a boy of about eighteen years of age, struck and injured Ferrell. Tatum gave no warning, and there was no warning of any kind given to Ferrell.

The evidence shows that the traffic at this point was heavy, and that the accident occurred about eleven o'clock in the daytime. The proof shows clearly that Ferrell could not paint signs and watch for cars. The driver of the Carlton-Hawkins truck was not looking, and negligently permitted the truck to strike Ferrell. After having been knocked down, Ferrell completed painting the signs under the direction of Tatum, and, when the noon hour came for him to go to lunch, he went

to a physician, who carried him to an infirmary, where an X-ray picture was made, showing that there was trouble with Ferrell's collar bone, but not disclosing a fracture. However, they taped his arm and collar bone and had his arm placed in a sling, and he carried it in a sling for seven weeks. He testified to suffering a great deal, and not being able to sleep, or rest on that side. He was a day laborer, and had to lift in order to perform his duty as a helper at a filling station, and he could not lift with that arm. He also testified that he still suffers pain due to his injury, and that there was a fracture of his collar bone because of a popping sound upon any movement of his shoulder.

In addition to the general issue plea, the Gulf Refining Company gave notice that it would undertake to prove that Ferrell had executed a release to the Carlton-Hawkins Coal Company in full settlement of his claim for injuries against them, as well as against the Gulf Refining Company. This release reads as follows:

"I, C. C. Ferrell, Jr., of Meridian, State of Mississippi, in consideration of two hundred sixty-five dollars to me paid by C. S. Carlton, trading as Carlton-Hawkins Coal Company, the receipt of which is hereby acknowledged, do hereby release and discharge the said C. S. Carlton, trading as Carlton-Hawkins Coal Company, from any and all claims, demands, actions and cause of action of every name and nature which I now have or might have upon or against said C. S. Carlton, trading as Carlton-Hawkins Coal Company, and especially from all claims arising out of any and all personal injuries, damages, expenses and loss or damage of whatsoever nature resulting or to result from an accident to me on or about the 10th day of October, 1931. I am over twenty-one years of age and I understand that liability is denied by said C. S. Carlton trading as Carlton-Hawkins Coal Company, who has made no agreement or promise to do or omit to do any act or thing not herein set forth, and

I further understand that this release is to compromise and terminate all claims for injuries or damages of whatsoever nature, known or unknown, including future developments thereof, in any way growing out of or connected, or which may hereinafter in any way grow out of or be connected, with said accident. Witness my hand and seal this 15th day of October, 1931.

"C. S. Ferrell, Jr.

"The foregoing instrument was read to C. S. Ferrell, Jr., who said that he understood it; that he knew that in signing it he was setting up an effectual bar to any recovery at law for injuries therein referred to; that he was satisfied with the settlement, and he signed it, all in our presence this October day of 15th, 1931.

"Mrs. C. C. Ferrell, Sr.

"Meridian, Miss."

The declaration contains this language: "That by reason of the relationship of master and servant then and there existing between the defendant company as master, and the plaintiff as servant, there arose under the law certain nondelegable duties resting on the master, namely, the duty of furnishing the plaintiff a reasonably safe place within which to perform his work; the further nondelegable duty of prescribing and enforcing reasonable rules relating to the giving of warning to its employees, including the plaintiff of any and all danger then and there attendant upon the execution of said particular character of service to be then performed." It further charged negligence in that the Gulf Refining Company had failed to exercise reasonable care in its nondelegable duty to furnish Ferrell with a safe place in which to work.

The cause was submitted to a jury under instructions of the court, and, although Tatum was sued jointly with the Gulf Refining Company, no verdict was rendered against him, and the judgment of the court below discharged him from liability, and he does not appeal here.

The appellant insists that it should have been granted the peremptory instruction which was refused by the court.

(a)  Because the street where Ferrell was directed to work was a reasonably safe place for the work.  It contends the paint brushes, buckets, and appliances are not dangerous. This is obviously true, but the appellee was directed by the man denominated "superintendent," who controlled and directed his labor, to go into the street, and it was necessary for him to kneel or crouch upon the pavement to paint the lines thereon.  He could not paint and look out for himself.  If he looked out, he could not paint, and, if he painted, he could not look out for himself.  The street, at this point, is shown to be one bearing heavy burdens of traffic with automobiles traveling thereon.  The filling station was inviting the public to drive therein.  He was on a part of the street devoted to public travel.  The street per se is not a dangerous place, but a much-traveled street, upon which a servant is required to work in the situation he was to be placed, is a dangerous place for such person; he being then helpless to look out for himself.

It is not necessary, under the facts in this case, for us to now say whether or not a street devoted to automobile traffic is a dangerous place in and of itself.

In the year 1931, by reliable statistics, the number of deaths from automobile accidents was thirty-four thousand, and the number of people receiving injuries worthy of report is approximately a million.  Whether the statistics be accurate or not, the number killed and injured is very great.  States and municipalities have found it necessary to enact rigid rules of traffic, and with all these the number injured is appalling.  The very purpose and spirit of our government will be defeated if the lives and limbs of our citizens are not preserved. There can be no happy people, no safe government, with such an appalling casualty list.

The street, at the point where Ferrell had been working, as stated, for about ten minutes, was not a reasonably safe place, he had a right to a warning from the master. It was necessary for him to do this work and he was, in so doing it, blindfolded, as it were, upon a street devoted to traffic. He was not in a situation such as the purveyor of ice, the stenographer of the lawyer, or the street sweeper. He was not warned. There can be no question that this was not a safe place to work as he was situated. The applicable principles of law are to be found and discussed in the case of Oil Co. v. Ellis, 72 Miss. 191, 17 So. 214, wherein the car upon which the servant was stenciling was not, of itself, dangerous, but the negligent bumping of box cars into it rendered it unsafe and dangerous. Also see Bradford v. Taylor, 85 Miss. 409, 37 So. 812; Yazoo & M. V. R. Co. v. Smith, 150 Miss. 882, 117 So. 339; Finkbine Lbr. Company v. Cunningham, 101 Miss. 292, 57 So. 916; and Coast Ship Co. v. Yeager, 120 Miss. 152, 81 So. 797.

The duty of the master to use reasonable care to provide a safe place for a man in his employ to work and carry out the design of the master in the furtherance of the master's business is thoroughly outlined in the cases cited above. There was no conflict in the record as to the condition under which Ferrell was directed to labor. This was proven by him, clearly and unmistakably, to be in the line of his duty, in the course of his employment, and in the furtherance of his master's business. That it was a dangerous position, there can be no debate. It was the master's continuous, nondelegable duty to use care to see that the place was reasonably safe for the servant to work therein. It is not a question of appliances; it is a question of place.

(b) It is insisted that Tatum was a fellow servant of Ferrell, and that the negligence was that of a fellow servant, and therefore the master is not liable. In this case the jury, under the instructions of the court, has

found that no warning was given to Ferrell. It is not only a nondelegable duty of the master to use reasonable care to provide a safe place for the servant to work in the furtherance of the master's business, but the master may not be relieved of liability in such cases ordinarily by shifting the responsibility to a fellow servant, and the negligence of the fellow servant, in this case, is imputable to the master. See cases cited, supra, and especially the cases of Alabama & V. R. Co. v. Groome, 97 Miss. 201, 52 So. 703, and Murray v. Natchez Drug Co., 100 Miss. 260, 56 So. 330. And such duty of the master is nondelegable by him to a fellow servant. We are not called on to decide whether Tatum was a fellow servant or not.

(c) It is next contended that ordering Ferrell to work on the edge of the avenue was not the proximate cause of the accident; Carlton's act being the proximate cause. It is too well settled in our jurisprudence to need citation of authorities that the concurring negligence of two or more persons proximately contributing to an injury does not constitute independent causes or efficient causes.

Of course if no person had driven an automobile on the street in question about eleven a. m. on that day this injury would not have occurred. It is likewise true that, if Tatum had warned Ferrell of the approaching truck, his injury would not have occurred; or, if the master had otherwise warned Ferrell, it would not have occurred.

The negligence of Carlton was a proximate contributing cause, and, together with the negligence of the master in not warning the servant of the imminent danger, contributed to the result. Useless each without the other.

It is not necessary for us to decide in this case the question of procedure as to whether or not Tatum was a fellow servant. If it be conceded that he was the fellow servant of Ferrell, that fact would not relieve the

master of liability in failure to perform its nondelegable duty due to the servant.

There can be no reason why employees should be exposed to danger in operating the master's business. Let it be known that courts cannot condone a master who undertakes to shift his responsibilities by appealing to the fellow-servant doctrine in such cases as the one at bar. If the negligence of the master in failing to provide and maintain a reasonably safe place for the servant to work, or to warn the servant of his danger, contributes to the injury of such servant, the master would be liable in spite of the concurring negligence of a third person. This principle of law is too well settled to now argue.

(d) It is urged that the release set forth in the statement of facts was a bar to appellee's recovery. We think, and have purposely set forth the release to show, that it is quite clear from the instrument itself, independent of the evidence offered by the appellee, that there was no intention on the part of Ferrell and Carlton to make any contract affecting any release beneficial to the Gulf Refining Company. Practically the same release was approved by this court in the cases of Bailey v. Delta Electric Light, etc., Co., 86 Miss. 634, 38 So. 354, and Waterman-Fouke Lumber Co. v. Miles, 135 Miss. 146, 99 So. 759.

We conclude that manifestly the appellant was not entitled to a peremptory instruction, but, on the contrary, on the question of liability, the appellee was entitled to a peremptory instruction. There is no real issue of facts on that question in the case at bar.

It follows that the errors assigned as to instructions and the competency of the evidence need not be here considered.

The verdict and judgment in this case appears to be large, but we cannot say that we are convinced that the

jury and the court below evinced passion and prejudice as reflected by their verdict.

We therefore decline to interfere with the verdict and judgment.

Affirmed.