## HOLLIDAY v. FULTON BAND MILL, Inc.

### No. 10892.

Circuit Court of Appeals, Fifth Circuit.

June 7, 1944.

Rehearing Denied July 8, 1944.

Jas. A. Cunningham, of Booneville, Miss., for appellant.

Thos. Fite Paine, of Aberdeen, Miss., and C. R. Bolton, of Tupelo, Miss., for appellee.

Before SIBLEY, McCORD, and LEE, Circuit Judges.

SIBLEY, Circuit Judge.

In appellant's suit for damages for a personal injury sustained while working at appellee's sawmill a verdict was directed for the defendant. This is the sole error specified on appeal, and the sole questions argued are whether appellant was given a reasonably safe place to work, and whether the negligence of the sawyer was that of a fellow servant.

The mill was a band-sawmill operated by the sawyer who controlled the motions of the carriage, and by a "dogger", who worked to the rear of the saw and fastened the dogs into the logs, and by ap-

pellant who as "off-bearer" worked just in front of the saw on the side of which the plank or slab fell when the log on the carriage had passed completely by the saw. There was a table to catch the plank or the slab which extended from the saw forward beside the path of the carriage. It was fitted with revolving rollers which carried the plank or slab forward and away. Planks, being flat on both sides, gave little trouble, but slabs, if the rough sides fell upon the rollers, would get at an angle and interfere with the return passage of the carriage, which moved rapidly and might carry the slab back against the saw, or otherwise injure the workers. The off-bearer's main duty was to stand by the table, in a semicircular place cut out of the table, to catch the lower edge of the slab and by pulling it up to cause the flat side to fall upon the rollers. Even then the heavy end sometimes caused the slab not to travel truly upon the rollers, so that the slab might interfere with the return of the carriage. It was the off-bearer's duty to see that this did not happen. The sawyer had a seat on the opposite side of the carriage near the saw from which he could see all operations. He controlled the return of the carriage by a lever and could quickly stop it, and it was the understood rule, though not formally promulgated as such, that he should stop it in the event a danger developed. Both he and the off-bearer were experienced at their work, and had had no accident before. On the day in question a slab was sawed off which was shorter than the log, light and thin at the front end, and thick and heavy at the rear end. Appellant caught it with his hook and it fell properly on the rollers and was passed forward about four feet, and the carriage was started back. The heavy back end of the slab caused the light front end to veer into the path of the carriage, the front block of which caught on it and thrust the slab back against appellant and pinned him against the frame of the saw and severely injured him, before the carriage was stopped. There was a wire cable which passed from the roof to weights below the floor, near and to one side of which appellant was standing. It had always been there, and ordinarily there was ample room to pass around it; but appellant, without explaining how it interfered with him, testified he believed he could have gotten out of the way if the cable had not been there.

■ The common-law principles touching the liability of master to servant are in force in Mississippi, with slight modifications not here important. Roughly stated, the master has the absolute duty to provide a reasonably safe place in which to work; to furnish reasonably safe and sufficient tools and appliances with which to work; to exercise reasonable care to select other servants who are skillful and careful; to warn the inexperienced servant of dangers of which he is ignorant; and if the work is dangerous and also complex, to organize it by making and enforcing rules so as to render it as safe as is reasonably possible. Having done this, the master is not an insurer of the servant's safety, but the servant assumes the ordinary risks of the work he has undertaken, including the risk that his fellow servants may not always be careful. The master is not responsible for the negligence of a fellow servant, unless he has in truth appointed him to see after some one of the master's absolute duties and the servant has failed in that. 35 Am.Jur., Master and Servant, §§ 138, 303, 334, 353. Of course a person in charge of the work, with full authority to control it and the workers, is not a fellow servant, but the representative of the master. Id. §§ 364, 369.

■ The evidence here is that the master was represented in the mill by a superintendent. The sawyer did not "hire and fire" men, but like the others worked under the direction of the superintendent. The sawyer did have control of the saw carriage and directed the setting of the blocks to determine the cut of the saw, "and worked with the crew as sawyers usually do." On this evidence the sawyer was not a vice-principal, but a fellow servant. Nor does it appear that he was charged by the master with looking out for any of the master's absolute duties. He was merely a sawyer with the sawyer's duty to be diligent and careful as such, just as appellant was off-bearer, with a duty to be diligent and careful as such. As a crew they were engaged in operating a band-saw. That was their work. The danger out of which appellant's injury arose, whether due to a want of care on the off-bearer's part or on the part of the sawyer, grew out of the work itself, not out of any defect in the place of work or the master's machines. It was a risk assumed by the workers.

■ That work around such a sawmill is not so complex as to require the making and enforcement of special rules was decided in Tatum v. Crabtree, 130 Miss. 462, 94 So. 449, 451. That case was relied on by the court below, together with Olsen v. North Pac. Lumber Co., 9 Cir., 100 F. 384, cited therein with approval by the Mississippi court, and they sustain the direction of the verdict.

■ The position of the cable as rendering the place of work unreasonably dangerous seems rather an afterthought. In the complaint, which elaborately states the negligences relied on, it is not referred to. In what seems to be a trial amendment mention is made of a want of room to escape accidents, but the cable is not named. The judge in his opinion on the case does not allude to it. The evidence about it is meager. It cannot be told just where it was, nor is it shown that some other place was practicable and safer. One witness said it was not there in the mill at which he worked, but he did not say it was wrongly placed or where the better place would be. It is testified that there was ordinarily no want of room to pass around the cable, and that immediately behind the off-bearer the way was open to the wall of the building. The slab did not thrust appellant against the cable, but against the frame of the saw. It does not appear that the cable was dangerously placed, nor that it was a proximate cause of the injury.

In our case of Southern Package Corp. v. Mitchell, 5 Cir., 109 F.2d 609, the superintendent of the mill had made a rule prohibiting a certain dangerous practice, but the rule was constantly violated. His failure to enforce it, being the negligence of the master in whose place he stood, was the ground of liability there. In Carey Reed Co. v. McDavid, 5 Cir., 120 F.2d 843, decided by this court, the work, though simple, was unsafe because the craneman who handled the heavy scoop bucket in taking gravel from a car could not see the shovellers at work in the car, nor they him. The master, to make the shovellers' place of work safe, posted a "spotter", to give signals to the cranemen and shovellers, but the spotter looked away at a passing train and the bucket was dropped on a shoveller. We held the spotter was acting for the master. Several cases cited from the Mississippi Supreme Court are similarly to be distinguished, either because the unsafety was in the place of work rather than a danger incident to the work itself, or because the negligent person was acting for the master in keeping the place of work safe, or was in a different work rather than as a fellow servant in the work of the injured person.

The judgment must be affirmed.

McCORD, Circuit Judge (dissenting).

I do not agree with the opinion of my colleagues. There is evidence in the record to the effect that the saw mill in question had an established practice of stopping the carriage and waiting on the offbearer of lumber. The plaintiff here had a right to rely upon that established practice and it was a nondelegable duty of the master not to violate this practice when it endangered human life. J. W. Edwards v. Haynes-Walker Lumber Co., 113 Miss. 378, 74 So. 284; Oil Company v. Ellis, 72 Miss. 191, 17 So. 214; Carey Reed Company v. McDavid, 5 Cir., 120 F.2d 843; Yazoo & M. V. R. Co. v. Smith, 150 Miss. 882, 117 So. 339.

The cases of Olsen v. North Pacific Lumber Co., 9 Cir., 100 F. 384, and Tatum v. Crabtree, 130 Miss. 462, 94 So. 449, have long since been by-passed not only by this court but by a long line of Mississippi cases, which makes the sawyer's act a nondelegable duty of the master and places him outside the scope of a fellow servant. Carey Reed Company v. McDavid, 5 Cir., 120 F.2d 843; Edwards v. Haynes-Walker Lumber Co., 113 Miss. 378, 74 So. 284; Southern Package Corp. v. Mitchell, 5 Cir., 109 F.2d 609; Norton v. Standard Oil Co., et al., 177 Miss. 758, 171 So. 691; Albert v. Doullut & Ewin, Inc., et al., 180 Miss. 626, 178 So. 312; Gulf Refining Co. v. Ferrell, 165 Miss. 296, 147 So. 476; Barron Motor Co. v. Bass, 167 Miss. 786, 150 So. 202; Masonite Corp. v. Lockridge, 163 Miss. 364, 140 So. 223, 141 So. 758; Wilbe Lbr. Co. v. Calhoun, 163 Miss. 80, 140 So. 680; Scott Burr Stores Corp. v. Morrow, 182 Miss. 743, 180 So. 741; Sea Food Co. v. Alves, 117 Miss. 1, 77 So. 857; Yazoo & M. V. R. Co. v. Smith, 150 Miss. 882, 117 So. 339; Jefferson v. Virginia-Carolina Chemical Co., 184 Miss. 23, 185 So. 230.

The evidence was in dispute as to whether or not plaintiff had been furnished a reasonably safe place in which to work. A negligent sawyer was not looking out for him, and the evidence discloses that he was hemmed in on three sides by a semicircular structure and behind him was suspended a

wire cable which prevented his escape from the on-coming carriage which mangled his leg. Sea Food Company v. Alves, 117 Miss. 1, 77 So. 857; Standard Oil Company v. Franks, 167 Miss. 282, 149 So. 798; Southern Package Corp. v. Mitchell, 5 Cir., 109 F.2d 609.

The cause should have been submitted to a jury. I respectfully dissent.